Joseph F. MARKUS, Petitioner,

v.

OLD BEN COAL COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 81–2643.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1983.

Decided July 22, 1983.

Rehearing Denied Aug. 22, 1983.

Harold B. Culley, Jr., West Frankfort, Ill., for petitioner.

J. Michael O'Neill, Washington, D.C., for respondents.

Before WOOD and ESCHBACH, Circuit Judges, and GORDON, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner seeks review of the United States Department of Labor Benefits Review Board's affirmance of a finding by a Labor Department Administrative Law Judge (ALJ) that petitioner was not entitled to benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, since he failed to offer evidence sufficient to invoke a presumption under the applicable regulation, 20 C.F.R. § 727.203(a)(4), that he was "totally disabled" due to pneumoconiosis, known colloquially as "black lung." Petitioner has also moved to remand his claim to the Labor Department's Office of Workers' Compensation Programs for payment by the Black Lung Disability Trust Fund pursuant to Section 205 of the Black Lung Benefits Amendments of 1981. We deny petitioner's motion to remand and affirm the decision of the Benefits Review Board. We also dismiss Respondent Old Ben Coal Company from this action as any stake in this litigation it might have possessed was dissolved by the 1981 Amendments transferring liability for disability payments under the Act from individual coal companies to the collective industry-supported Trust Fund.

### I.

Petitioner originally applied for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, in April, 1973. His claim was denied by the Department of Health, Education and Welfare (HEW) in July, 1973. The enactment of the Black Lung Benefits Reform Act of 1977, how-

---

* The Honorable Myron L. Gordon, District Judge for the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

ever, afforded him the opportunity to seek review of his claim again by HEW. But it was again denied by that agency in May, 1979, and was transferred to the Department of Labor for further proceedings.

Prior to the 1979 HEW denial of his claim, petitioner had filed a second claim for black lung benefits with the Department of Labor in November, 1974. Initially, the Department denied the claim, but in May, 1979, the Department approved it, holding the petitioner eligible for benefits under the Black Lung Benefits Act. Subsequently, a *de novo* hearing was held in May, 1980, before a Labor Department ALJ, to assess the evidence supporting the benefit claim, a procedure mandated under the Act, 30 U.S.C. § 945, and its accompanying regulations. After that hearing, the ALJ ruled that petitioner was not entitled to benefits under the Act.

The fulcrum of the ALJ's May, 1980 determination—and thus the main focus of this appeal—proved to be whether petitioner had offered sufficient evidence to establish that he was entitled to an "interim presumption" that he was "totally disabled due to pneumoconiosis," and was thus entitled to benefits in the absence of rebuttal evidence, of which none was offered here. 20 C.F.R. § 727.203(a) sets forth five distinct avenues of proof allowing the invocation of that interim presumption, four of which are relevant here: (1) a chest x-ray, biopsy, or autopsy establishing the existence of pneumoconiosis; (2) ventilatory studies establishing the presence of a chronic respiratory or pulmonary disease as demonstrated by test results below certain established threshold values; (3) blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung aveoli to blood as evinced by test results below certain threshold values; and (4) "Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, estab-

lish[ing] the presence of a totally disabling respiratory or pulmonary impairment."

The ALJ held, and it is uncontested here, that the evidence presented was insufficient to support the invocation of the interim presumption under the first three avenues outlined above. With respect to the first, the petitioner had submitted five x-rays, three of which were initially read by a doctor as showing positive indications of pneumoconiosis. One of these three was excluded from evidence by the ALJ on the basis that it was neither signed nor dated; the other two were subsequently re-read as negative for pneumoconiosis by more highly qualified "certified B readers." [1] Especially since one of these more expertly read negative x-rays was far more recent than the others, the ALJ accepted this negative reading as conclusive. With respect to the second avenue of establishing the interim presumption—ventilatory studies—two of four tests revealed values indicative of respiratory disease, but the ALJ discredited these results as there were several indications that the results were unreliable: the administering technician noted that the petitioner did not cooperate fully with the test and give his greatest effort; the petitioner testified that he received no special instructions in connection with the test (*e.g.* to inhale, hold and exhale as fast as possible) which are essential to its success; and the resultant tracings were themselves facially indicative of breathing not in accord with the normally required instructions. With respect to the third avenue of establishing the interim presumption, the blood gas studies, neither of the two tests produced values high enough to invoke the interim presumption.

The petitioner also attempted to invoke the interim presumption through the fourth option set forth in 20 C.F.R. § 727.203(a): "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, [which] establishes the presence of a totally disabling

1. Reader ratings are established by the National Institute for Occupational Safety and Health; the "B" rating indicates greater expertise in the determination of pneumoconiosis from the examination of x-ray film. *Sharpless v. Califano,* 585 F.2d 664, 666 n. 5 (4th Cir.1978).

respiratory or pulmonary impairment." In this connection, the ALJ considered a Department of Labor Black Lung Claims Report prepared by the petitioner's physician which diagnosed petitioner as suffering from pneumoconiosis based in part on the very x-rays and ventilatory studies which were, as noted above, discredited by the ALJ. In response to the Report's query concerning the severity of the diagnosed impairment, the physician noted only, "[Patient] retired early because of shortness of breath while working." The only other statement by petitioner's physician bearing directly on the severity of his malady was contained in a transmittal letter accompanying results of some of the x-rays and breathing tests alluded to above; there the physician noted that "since the [petitioner] has spent so many years in the mine he feels he certainly is eligible for the pneumoconiosis pension." In his decision, the ALJ mentioned only that physician's Black Lung Claim Report and concluded that it did not meet the threshold standard of 20 C.F.R. § 727.203(a)(4) because it did not contain "a documented opinion of a physician exercising reasoned medical judgment that there exists a totally disabling repiratory [sic] or pulmonary impairment." Accordingly, the ALJ refused to invoke the interim presumption under this avenue as well.

Petitioner appealed the ALJ's decision to the Department of Labor Benefits Review Board, which concluded "[a]fter a careful review of the entire record" that the ALJ's decision was supported by "substantial evidence." Petitioner seeks review of that affirmance.

## II.

But petitioner first contends that we may not even review the ALJ's finding for "substantial evidence," as he is entitled to an automatic remand of his claim to the Black Lung Disability Trust Fund for payment pursuant to the Black Lung Benefits Amendments of 1981. The 1981 Amendments established the industry-supported Fund, and transferred liability for the payment of benefits, warranted under the pre-existing black lung disability standards and procedures, from the individual coal opera-

tors to the Fund. Specifically, 30 U.S.C. § 932(c) provided that the Fund assumed liability in cases involving "a claim denied before March 1, 1978, and which *is or has been approved* in accordance with the provisions of [30 U.S.C. § 945]." (emphasis added). Petitioner now argues that, since his claim was initially approved by the Department of Labor after a preliminary review in May, 1979 but before the *de novo* evidentiary hearing, his claim "has been approved" within the meaning of Section 945 and thus the Act requires that he now be made whole by the Trust Fund, notwithstanding the later determination of the ALJ and the Benefits Review Board that his claim was without merit. In short, petitioner would read 30 U.S.C. § 932(c) as creating automatic fund liability if, at any stage of the four-step claim review process, his claim is approved.

Such a reading could hardly have been contemplated by Congress. A more natural reading is simply that the use of the phrase "has been" was Congress' means of authorizing assessments against the Fund for claims which "had been" approved under the pre-existing Section 945 procedures (in effect since 1977) but prior to the enactment of the 1981 Amendments. Indeed, in testimony before the Senate Subcommittee on Labor and Human Resources, the Deputy Under Secretary for Labor and Employment Standards noted that the transfer provision applied to "claims denied and closed prior to the 1977 amendments, and subsequently reopened and approved pursuant to the special review process established by those amendments," Hearings Before the Subcommittee on Labor, Committee on Labor and Human Resources, United States Senate, Dec. 14, 1981, p. 19. The "special review process" established pursuant to the 1977 Amendments includes the entire array of determinations and appeals witnessed in the instant case, not just the interim, positive determination in May, 1979. It would be most unusual for Congress to countenance the establishment of a multi-tiered claim review process if, as petitioner's reading would have it, liability automatically ensued from a positive determination at the first level. In short, we think the plain

sense of the statute, when viewed against the history of the Amendments, is that the provision creating liability when a claim "is or has been approved" under Section 945 is simply a grandfather clause which Congress felt necessary to hold the industry Fund liable for claims, unlike the one presented here, which *had* survived the *entire* gauntlet of appeals and reviews prior to the 1981 enactments but after the 1977 Amendments. Accordingly, we must deny the motion to remand.

■ One more statutory imperative must be addressed. The 1981 Amendments to the Act provide for liability only against the industry Fund, and not against individual coal operators such as Respondent Old Ben Coal Company. Accordingly, we must dismiss Old Ben from the instant case, as the 1981 Amendments have eliminated any stake in this matter the Company might have previously possessed. *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972).

### III.

The only question remaining before us, then, is whether the Department of Labor Benefits Review Board properly held that the Labor Department ALJ's finding that petitioner did not meet the standards for invocation of the interim presumption of total pneumoconiosis disability under 20 C.F.R. § 727.203(a)(4) was supported by substantial evidence on the record as a whole. While petitioner appears not to dispute the ALJ's finding that the presumption was properly held unavailable under the x-ray, ventilatory test, and blood gas test routes to establishment of that presumption, he argues that there was "other medical evidence," including his physician's reports, sufficient to establish the presence of a "totally disabling" respiratory or pulmonary malady. Such evidence, he argues, includes his doctor's statements that petitioner "retired early because of shortness of breath while working" and that "since the [petitioner] has spent so many years in the mine he feels he certainly is eligible for the pneumoconiosis pension," as well as the positive, but discredited, x-ray and ventilatory test readings, described above. Taken to-

gether, petitioner argues, the evidence establishes total disability from respiratory or pulmonary disease.

■ The Respondent Director takes the position that the "substantial evidence" question presented here may be resolved semantically, since there is nowhere in the record a statement by the petitioner's physician that petitioner was in fact "totally disabled" as a result of his problem. In essence, the Director argues that under the regulations the term "totally disabled" is a medical rather than a legal standard, and thus unless the physician directly diagnoses "total disability" or its semantic equivalent, the presumption is not satisfied. Petitioner, of course, takes the opposite view. Noting that there is some inconsistency within the Department's administrative case law on this point, *compare, e.g., Justice v. Jewell Ridge Coal Co.,* 3 BLR 1–547 (1981) and *Lessar v. C.F. & I. Steel Corp.,* 3 BLR 1–63 (1981) with *Daniel D. Thomas v. Old Ben Coal Co.,* 80–562 BLA (March 8, 1982), we need not adopt the Director's view, for we find that, even if the existence of total disability is a legal question to be answered by the full range of available data, the ALJ's conclusion was supported by substantial evidence.

■ As this court has previously stated in reviewing administrative adjudications under the Act, we must not set aside the ALJ's inferences simply because we find the opposite one more reasonable, or because we question the factual basis of that inference; more importantly, we must be cognizant that the ALJ "is not bound to accept the opinion or theory of any given medical officer, but may weigh the medical evidence and draw his own inferences." *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797, 802 (7th Cir.1977). The presumption sought to be invoked here requires "medical evidence, including the documented opinion of a physician exercising reasoned medical judgment" which establishes a "total disability." By any standard, petitioner's proof did not meet this threshold.

Petitioner's doctor merely stated that petitioner "retired early because of shortness

of breath while working" and that since he had "spent so many years in the mine he feels he certainly is eligible for the pneumoconiosis pension." But it would require a great leap to equate mere "shortness of breath" or petitioner's unilateral belief in his pension eligibility as reported by a physician with medical evidence establishing a total disability. The fact that the "shortness of breath" led petitioner to retire only establishes that the petitioner, and not his doctor, believed that his affliction was severe—and not even that it was so severe as to totally prevent him from engaging in other kinds of work. Petitioner's self-serving affirmation, conveyed through his doctor, of his right to a pension, adds little, for, like the first statement, it is neither an objective assessment nor additionally does it directly attest to any disability. In short, there is an absence here of any actual medical "opinion" that would reasonably suggest, much less compel, a trier of fact to conclude, that petitioner's malady was totally disabling.

Petitioner argues that his physician's submissions, including the above statements, and the positive x-ray and ventilatory studies submitted in connection with this claim, taken as a whole, amount to "documented opinion ... [that] establishes the presence of a totally disabling ... impairment." But this cannot be so, for the proffered "documentation," *i.e.* the positive x-ray and ventilatory tests, were properly, and uncontestedly, held unreliable by the ALJ in light of later, and more expert, readings of the same x-ray film and in light of petitioner's noncooperation with the ventilatory tests. *Sharpless v. Califano,* 585 F.2d 664, 666–67 (4th Cir.1978); *Justice v. Jewell Ridge Coal Co.,* 3 BLR 1–547, 1–550, 1–551 (1981). It defies common sense to suggest that such directly discredited evidence can somehow be revived to support a finding of disability, much less total disability, under a different branch of the interim presumption test.

It is true that the ALJ did not explicitly reiterate that this test evidence, which he considered extensively and rejected with respect to the 20 C.F.R. § 727.302(a)(1)–(3) avenues of invocation, was also deserving of no weight in connection with the 20 C.F.R. § 727.302(a)(4) "medical opinion" avenue, but this is not fatal, for we will uphold an agency's decision of less than ideal clarity if the agency's path may reasonably be discerned or if failure to explain every step in the reasoning process could have made no difference in the outcome. *Atchison, Topeka & Santa Fe Ry. Co. v. Union Tank Car Co.,* 611 F.2d 1184, 1192 (7th Cir.1979); *Kurzon v. U.S. Postal Service,* 539 F.2d 788, 793–96 (1st Cir.1976). It is quite clear that, having found the positive test results unreliable, the ALJ felt them useless in connection with the "medical opinion" analysis.

In sum, there is simply no evidence on the record that leads us to disagree with the Benefits Review Board's determination that the ALJ properly refused to invoke the interim presumption afforded by 20 C.F.R. § 727.203(a) in this case.

For the foregoing reasons, Respondent Old Ben Coal Company is dismissed from this cause, petitioner's motion to remand is denied, and the decision of the Benefits Review Board is affirmed.

AFFIRMED.