**Armand PAVESI, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 84–3296.

United States Court of Appeals,
Third Circuit.

Argued Jan. 16, 1985.

Decided April 4, 1985.

Rehearing and Rehearing In Banc Denied April 30, 1985.

Lawrence R. Chaban (Argued), Yablonski, King, Costello & Leckie, Washington, Pa., for petitioner.

Francis X. Lilly, Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Counsel for Appellate Litigation, Christopher J. Heffernan, Rae Ellen Frank James (Argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before ADAMS and WEIS, Circuit Judges and POLLAK, District Judge *.

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

This is an appeal from a decision of the Benefits Review Board of the Department of Labor dated April 12, 1984, affirming a decision of an administrative law judge denying benefits to petitioner under the Black Lung Benefits Act, 30 U.S.C. §§ 901 et seq. and 945 (1982). Petitioner challenges the decision of the Benefits Review Board on the following grounds: (1) the Director could not, during the course of the administrative review of petitioner's claim, take a position contrary to the deputy commissioner's initial finding of eligibility; and (2) the decision of the Benefits Review Board is not supported by substantial evidence. We find petitioner's first contention unpersuasive. However, we also find that the decisions of the Benefits Review Board and of the administrative law judge do not establish that the disability suffered by petitioner was not one of the impairments covered by the Black Lung Benefits Act. Accordingly, the decision of the Benefits Review Board will be vacated and the case remanded for further consideration.

### I.

Petitioner, Armand Pavesi, was born on June 24, 1913. He retired in 1977 after more than 45 years of work as a coal miner. In June 1973 petitioner filed his first application for Black Lung benefits with the Social Security Administration.

---

* Hon. Louis H. Pollak, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

The final denial of that claim was filed on September 25, 1973. On August 1, 1977, Mr. Pavesi filed an application for Black Lung benefits with the Department of Labor. Pursuant to the 1977 Amendments to the Black Lung Benefits Act, Pub.L. No. 95–239, 86 Stat. 153 (1978), the previously denied application was reactivated for administrative review under the procedures of section 945. Upon petitioner's election, the two applications were consolidated and reviewed by the Department of Labor. 30 U.S.C. § 945(a)(1) (1982).

The first stage of review took place before the deputy commissioner, an official of the Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation. On June 27, 1979, the deputy commissioner issued a notice of initial finding of eligibility. That letter stated that Harmer Coal Company, Mr. Pavesi's last employer, should commence payment of benefits within thirty days. If such payments were not made, the notice recited, the Black Lung Disability Trust Fund would pay benefits for which Harmer Coal Company would be ultimately liable should the initial finding of eligibility for benefits be sustained on further review.

Petitioner Pavesi's application was then referred to an administrative law judge ("ALJ") for a formal hearing. Petitioner and Harmer Coal Company took part in that hearing on June 2, 1980. Although, under the regulations, 20 C.F.R. § 725.-360(a)(5) (1984), the Director, Office of Workers' Compensation Programs ("Director"), is a party to such proceedings, no appearance was entered for the Director at the time of the hearing.

The ALJ concluded that petitioner had established the interim presumption of eligibility under the applicable regulation since petitioner had been employed as a coal miner for more than ten years and ventilatory studies had produced results within the prescribed ranges. 20 C.F.R. § 727.203(a)(2) (1984).

The evidence before the ALJ included two reports of evaluations of a September 1977 chest x-ray. The first report, by Dr. Lester Freedman, stated that the x-ray was positive for pneumoconiosis. The second reading of the x-ray, by Dr. W.S. Cole, a certified "B" reader,[1] was negative for pneumoconiosis. The ALJ also had before him the results of pulmonary function studies. A study performed on September 28, 1977 resulted in a finding of "mild restriction, possible mild airways obstruction." A later study by Dr. C. Vaughn Strimlan yielded results indicative of a "moderately severe restrictive ventilatory pattern." Dr. Strimlan noted, however, that the technician performing the pulmonary function study remarked that there was poor patient effort. Mr. Pavesi testified that he gave full cooperation on all tests.

Reports from three examining physicians were also provided to the ALJ. Dr. M.I. Levine concluded that the petitioner was "totally and permanently disabled due to pneumoconiosis due to coal dust." However, the ALJ found the Levine report to be conclusory and unsupported by objective tests. Dr. Julian Eligator diagnosed "coalworker's pneumoconiosis" based upon an October 1977 examination. The Eligator report was also disregarded by the ALJ who felt that its findings were based upon only a cursory examination. By contrast, a report prepared by Dr. C. Vaughn Strimlan which presented the "final clinical impression" that there "was no evidence for coal workers' pneumoconiosis" was found convincing by the ALJ because it was based upon a thorough examination and supporting laboratory studies.

Mr. Pavesi testified that he had suffered from shortness of breath during his last three or four years in the mines. He said that his respiratory problems had become markedly worse since his retirement: walk-

---

1. It appears that the Public Health Service's National Institute for Occupational Safety and Health has a system for rating those who evaluate x-rays; a "B" reader is regarded as having greater expertise than an "A" reader. *Sharpless v. Califano*, 585 F.2d 664, 666 n. 5 (4th Cir. 1978); *Markus v. Old Ben Coal Co.*, 712 F.2d 322, 324 n. 1 (7th Cir.1983).

ing was so great an effort that sometimes he could go no more than 100 feet before he was required to stop and rest.

The ALJ concluded, in a decision and order dated September 15, 1980, that the employer had rebutted the presumption of disability. The ALJ found the report of Dr. Strimlan and the x-ray reading by Dr. Cole persuasive that Mr. Pavesi did not suffer from pneumoconiosis. Accordingly, the ALJ denied Mr. Pavesi's benefits claim.

Mr. Pavesi appealed this determination to the Benefits Review Board on October 6, 1980. While the claim was pending before the Board, Congress passed the 1981 Amendments to the Black Lung Benefits Act, Pub.L. No. 97–119, 95 Stat. 1635 (1981). Those amendments altered 30 U.S.C. § 932 of the Black Lung Benefits Act to provide that the Black Lung Disability Trust Fund, not the employer, should be responsible for payment of benefits on a claim which had been denied prior to March 1, 1978 and which "is or has been approved in accordance with the provisions of section 945." [2]

Because Mr. Pavesi's claim had been denied by the Social Security Administration prior to 1978 and had been consolidated with his later application to the Department of Labor for section 945 administrative review, on March 18, 1982, the Benefits Review Board issued a show cause order inquiring whether the claim should be returned to the deputy commissioner's office for payment of benefits by the Black Lung Disability Trust Fund. Harmer Coal Company responded that it had no objections to a remand provided it would be released from responsibility for payment of benefits pursuant to the 1981 Amendments. The Director responded to the show cause order as well. The Director stated that it

had no objection to the dismissal of the employer and the substitution of the Black Lung Disability Trust Fund as the party ultimately responsible for payment of any benefits due. But the Director did oppose a remand for payment of benefits. The Director stated that this opposition was based upon the fact that evidence presented to the ALJ which supported the denial of benefits was not presented to the deputy commissioner at the time of the initial determination of eligibility. No response to the show cause order was received from the petitioner. On the basis of these submissions, the Benefits Review Board, in an order dated September 14, 1983, retained jurisdiction of the claim.

Petitioner filed a motion for reconsideration on September 23, 1983. The motion argued, as petitioner argues to this Court, that the Director cannot depart from the position taken by the deputy commissioner in the initial finding of disability. In an opinion dated December 12, 1983, the Benefits Review Board concluded that petitioner's objections were unfounded and denied the motion for reconsideration.

A final decision on the merits of petitioner's application for benefits was issued by the Benefits Review Board on April 12, 1984. The Benefits Review Board found the decision of the ALJ to be supported by substantial evidence and affirmed the denial of benefits.

## II.

Petitioner's principal challenges to the final decision of the Benefits Review Board are: (1) the Director was without authority to take a position contrary to the original position taken by the deputy commissioner; [3] and (2) the decision of the ALJ and,

---

**2.** The date referred to in the 1981 Amendments to section 932—March 1, 1978—is the date on which the 1977 Amendments to the Black Lung Benefits Act, Pub.L. No. 95–239, 86 Stat. 153 (1978), took effect. From that date forward, the section 945 procedures created by the 1977 Amendments became available to individuals whose claims had been denied under the statutory scheme prior to the 1977 Amendments.

**3.** Mr. Pavesi's brief on this issue was duplicated from the brief on the same issue in the related appeals of *Sakach v. Director, Office of Workers' Compensation Programs,* No. 84–3071; *Luketich v. Director, Office of Workers' Compensation Programs,* No. 84–3109; *Goodlin v. Director, Office of Workers' Compensation Programs,* No. 84–3110; *Yanish v. Director, Office of Workers' Compensation Programs,* No. 84–3297; *Novinc v. Director, Office of Workers' Compensation Pro-*

thus, the affirmance of that decision by the Benefits Review Board, were not based upon substantial evidence.

### A.

Petitioner asserts that, once the Director was substituted as the party responsible for payment of all benefits due, the Director was bound to agree to a remand of the matter for payment of benefits. In support of this position, petitioner notes that the deputy commissioner is an official of the Office of Workers' Compensation Programs. As a result, petitioner contends, the initial finding of disability by the deputy commissioner necessarily reflects the views of the Director with regard to that application. Therefore, petitioner contends, this initial finding is binding on the Director throughout the processing of the application for benefits.[4]

grams, No. 84–3426. Those appeals were dismissed for lack of jurisdiction on November 6, 1984. Consequently, the merits of the substantive arguments advanced in those cases were not addressed.

4. Petitioner spends a substantial portion of his brief on this appeal in a discussion of the Director's "interest" in disputing the initial finding of eligibility reached by the deputy commissioner. Petitioner contends that the Director's "interests" in this case should not have been affected by the substitution of the Black Lung Disability Trust Fund as the party ultimately liable for payment of benefits. Thus, petitioner argues, the Director's only legitimate interests were in supporting the initial findings of his subordinate, the deputy commissioner, and in prompt payment of benefits to eligible claimants. Consequently, in petitioner's view, there was no reason for the Director to oppose petitioner's right to benefits. However, it is not this Court's function to second-guess administrative decisions regarding the interests an agency of the executive branch might have in a particular result. Furthermore, assuming arguendo that it is necessary for the Director to establish an "interest" in opposing the decision of the deputy commissioner, as Judge Sloviter noted in Director, Office of Workers' Compensation Programs v. Brodka, 643 F.2d 159, 162 (3d Cir. 1981), the Director, as the representative of the Black Lung Disability Trust Fund, clearly has an interest in assuring that the claims paid by that Fund are legitimate and in challenging those applications for benefits from the Fund which may not be supported.

■ The contention that the Director is bound by an initial decision of the deputy commissioner has been presented to and rejected by this Court in a similar context. In Director, Office of Workers' Compensation Programs v. Brodka, 643 F.2d 159 (3d Cir.1981), Judge Sloviter observed that when, as in the present case, the Director is acting as the representative of the Black Lung Disability Trust Fund, the Director has an "obligation to protest unjustified claims against it [the Fund], Gurule v. Director, Office of Workers' Compensation Programs, 11 BRBD 664, 673 (1979)." Id. at 162.[5] Therefore, this Court held, the Director can appeal from the decision of the deputy commissioner on the question of the amount of the claimant's attorney's fees when the Black Lung Disability Trust Fund would be liable for those fees. Nothing in that decision suggests that a finding of eligibility should be treated differently.[6]

5. Both the Director and the deputy commissioner are represented by the Solicitor of Labor. Petitioner views this as an additional reason to question the propriety of the Director's decision to take a position contrary to the initial determination of the deputy commissioner. This argument was considered and rejected by this Court in Brodka.

We see no barrier to the Director's appeal of an order of the deputy commissioner arising from the circumstance that both are represented by the Solicitor of Labor. The deputy commissioner will not be an adverse party in that appeal any more than the Benefits Review Board—which is also generally represented in court proceedings by attorneys designated by the Solicitor of Labor, 20 C.F.R. § 801.402 (1980)—is an adverse party in this appeal. The party adverse to the Director in any future appeal will be the claimant.

Brodka, supra, 643 F.2d 159, 162 (3d Cir.1981).

6. In fact, a footnote in Brodka discusses the type of conflict between the positions of the deputy commissioner and the Director found in the present case.

The deputy commissioner is the official responsible for making the initial administrative determination of a claim for benefits. 20 C.F.R. § 725.410(a) (1980). The proposed decision and order of the deputy commissioner will become final unless a party requests a revision of the order or a hearing before an administrative law judge. 20 C.F.R. § 725.419 (1980). If the benefits will come from the Black Lung Disability Trust Fund rather than

Petitioner's position is also contradicted by the regulations governing administrative proceedings under the Black Lung Benefits Act. No regulation precludes the Director from disagreeing with the initial finding of eligibility of the deputy commissioner. As Judge Sloviter noted in *Brodka,* the Director is a party to the administrative proceedings from the outset. 20 C.F.R. § 725.360(a)(5) (1984). Any party, including the Director, can appeal an adverse decision of the deputy commissioner if the appeal is timely under the regulations. 20 C.F.R. § 725.419(a) (1984). *See Brodka, supra,* 643 F.2d at 162–63. Therefore, the regulations support the proposition that the Director may dispute the initial finding of eligibility and seek further review of that determination.[7]

Moreover, after the enactment of the 1981 Amendments to the Black Lung Benefits Act, the Department of Labor issued a regulation which explicitly authorizes the Director to oppose the payment of benefits in these circumstances:

*Procedure following dismissal of an operator.* After it has been determined that an operator or carrier must be dismissed as a party in any claim in accordance with this section, the Director shall take such action as is authorized by the Act to bring about the proper and expeditious resolution of the claim in light of all relevant medical and other evidence. Action to be taken in this regard by the Director may include, but is not limited to the assignment of the claim to the Black Lung Disability Trust Fund for the payment of benefits, the reimbursement of benefits previously paid by an operator or carrier if appropriate, *the defense of the claim on behalf of the Trust Fund,* or proceedings authorized by § 725.310.

20 C.F.R. § 725.497(d) (1984) (emphasis added).[8] In sum, the Director's actions in this proceeding are consistent with the regulations promulgated pursuant to the Black Lung Benefits Act.

Petitioner's contention that the Director was bound by the initial finding of eligibility finds no greater support in the statute. Under the 1981 Amendments to the Black Lung Benefits Act, ultimate responsibility for payment of benefits was shifted from Mr. Pavesi's last employer to the Black Lung Disability Trust Fund. The relevant portion of the amendments is now codified in section 932(c) of Title 30, which states, in pertinent part:

no benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis ... which was the subject of a claim denied before March 1, 1978, and which is or has been approved in accordance with the provisions of section 945 of this title.

Because this provision relieves the former employer from liability for payment of benefits, responsibility for such claims such as Mr. Pavesi's then falls upon the Black Lung Disability Trust Fund. 30 U.S.C. § 932(j) (1982).

Petitioner suggests that this language requires immediate payment by the Black Lung Disability Trust Fund of all claims denied prior to March 1, 1978 which were revived under section 945 of the Black

---

from a responsible employer, Department of Labor lawyers will appear against the claimant which, in the event the deputy commissioner has recommended payment, pits those lawyers against the deputy commissioner. *See generally* Kilcullen, *Benefits Under the Federal Black Lung Program,* 26 Prac.Law. 71, 74–75 (June 1, 1980).

*Brodka, supra,* 643 F.2d 159, 163 n. 7 (3d Cir. 1981).

**7.** Nothing in these provisions suggests that the right of a party to appeal turns upon whether that party had been an active participant in the earlier steps of the administrative process.

**8.** Petitioner correctly notes that this regulation did not take effect until May 31, 1983, after the Director had submitted a response to the show cause order opposing remand of petitioner's claim for payment. However, the Director was not substituted for the responsible operator as the party liable for payment of benefits until September 14, 1983, three and one half months after the regulation had become effective. Consequently, at the time the Director became an active participant in these proceedings and began formal opposition to petitioner's claim, the Director's actions were fully authorized by 20 C.F.R. § 725.497(d) (1984).

Lung Benefits Act and were later approved at any point in the administrative process, even if the approval was reversed at a subsequent stage of the process. It is asserted that the initial finding of eligibility on petitioner's application compels the conclusion that petitioner's application for benefits *"has been approved* in accordance with the provisions of section 945." 30 U.S.C. § 932(c) (1982) (emphasis added).

This reading of the 1981 Amendments has been rejected by the Court of Appeals for the Seventh Circuit in a similar case. *Markus v. Old Ben Coal Co.*, 712 F.2d 322 (1983). There, an initial finding of eligibility was followed by a *de novo* review by an administrative law judge. The ALJ concluded that the application for benefits should be denied and the Benefits Review Board found the ALJ's decision to be supported by substantial evidence. Faced with the petitioner's assertion that the 1981 Amendments mandated automatic payment of benefits to any individual who had been found eligible at any step of the administrative process, the court concluded:

> Such a reading could hardly have been contemplated by Congress. A more natural reading is simply that the use of the phrase "has been" was Congress' means of authorizing assessments against the Fund for claims which "had been" approved under the pre-existing Section 945 procedures (in effect since 1977) but prior to the enactment of the 1981 Amendments. Indeed, in testimony before the Senate Subcommittee on Labor and Human Resources, the Deputy Under Secretary for Labor and Employment Stan-

dards noted that the transfer provision applied to "claims denied and closed prior to the 1977 Amendments, and subsequently reopened and approved pursuant to the special review process established by those amendments," Hearings Before the Subcommittee on Labor, Committee on Labor and Human Resources, United States Senate, Dec. 14, 1981, p. 19. The "special review process" established pursuant to the 1977 Amendments includes the entire array of determinations and appeals witnessed in the instant case, not just the interim, positive determination in May, 1979. It would be most unusual for Congress to countenance the establishment of a multi-tiered claim review process if, as petitioner's reading would have it, liability automatically ensued from a positive determination at the first level. In short, we think the plain sense of the statute when viewed against the history of the Amendments, is that the provision creating liability when a claim "is or has been approved" under Section 945 is simply a grandfather clause which Congress felt necessary to hold the industry Fund liable for claims, unlike the one presented here, which had survived the *entire* gauntlet of appeals and reviews prior to the 1981 enactments but after the 1977 Amendments.

*Id.* at 325–26.[9]

We concur in the Seventh Circuit's analysis of this aspect of the 1981 Amendments. The interpretation of those Amendments proposed by Mr. Pavesi in the present case strains the plain language of the statute to

**9.** Petitioner contends that the Seventh Circuit erred in *Markus* by holding that the 1981 Amendments *only* guarantee payment from the Trust Fund for those claims which *completed* the entire gauntlet of appeals prior to the enactment of the 1981 Amendments. Petitioner asserts that his view of the 1981 Amendments is contrary to the clear legislative intent in drafting those changes to the Black Lung Benefits Act which was, *inter alia*, to assure payment by the Black Lung Disability Trust Fund of *all* claims processed under section 945, not merely those claims which were fully reviewed prior to 1981. However, petitioner seems to have misread *Markus*. When the particular portions of

the *Markus* opinion upon which petitioner bases his argument are read in the context of the opinion's full analysis of the 1981 Amendments, it is apparent that the Seventh Circuit fully recognized that the 1981 Amendments shift to the Black Lung Disability Trust Fund responsibility for all payments due to those whose claims are approved through a section 945 administrative review, including those whose claims had not yet been fully resolved at the time the 1981 Amendments took effect. *Markus* merely notes that the 1981 Amendments apply to eligibility determinations which became final prior to the passage of those amendments as well as to subsequent determinations.

reach a result which is supported neither by logic nor by legislative history.

Accordingly, we conclude that the 1981 Amendments to the Black Lung Benefits Act do not mandate payment of benefits to any individual whose claim was approved at an initial or intermediate administrative proceeding but disapproved at a later stage of the administrative process. Section 932(c) merely provides that the Black Lung Disability Trust Fund, not the former employer, must shoulder the costs of benefits awarded as the result of final determinations of eligibility pursuant to the section 945 procedure established in the 1977 Amendments to the Black Lung Benefits Act. Section 932(c) does not expand the liability of the Black Lung Disability Trust Fund beyond that which would have been faced by the employer prior to the Amendments. Liability—whether that of the employer or that of the Fund—necessarily requires a determination of eligibility which has become "final" under the procedure established by the statute and regulations.

Mr. Pavesi's final argument in support of the proposition that the Director cannot depart from the initial finding of the deputy commissioner is that the Director's actions in the present case violated petitioner's due process rights. Petitioner asserts that the Director's decision to oppose liability once the Director was substituted for the employer as the party responsible for payment of benefits constituted a change in position from the Director's original stand with regard to the question of eligibility.[10] The conclusion that the Director changed his position is predicated upon the assumption that the initial finding of the deputy commissioner is equivalent to a decision of the Director.

 In light of our conclusion that no provision of the Black Lung Benefits Act and no regulation issued thereunder ties the Director to the position taken by the deputy commissioner, the factual predicate for Mr. Pavesi's due process argument— that the Director *changed* his position—appears to be lacking. However, assuming *arguendo* that petitioner could establish a basis for the proposition that the Director's original position in this proceeding was that of the deputy commissioner, the Director's decision to alter that position and to contest petitioner's eligibility does not violate due process.[11] It is well established that "an agency may alter or reverse its position if the change is supported by a reasoned explanation." *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 289 (D.C.Cir.1981). *See American Petroleum Institute v. E.P.A.*, 661 F.2d 340, 355 (5th Cir.1981); *Hatch v. Federal Energy Regulatory Commission*, 654 F.2d 825, 834 (D.C.Cir.1981). In the present case, the Director gave a clear explanation for op-

---

**10.** Petitioner also asserts that the Director ignored the procedural requirements established by the Black Lung Benefits Act when the Director decided to oppose petitioner's claim. More specifically, petitioner contends that the action taken by the Director can only occur pursuant to the procedures for modification of an award of benefits outlined in § 922 and § 919 of Title 33 as incorporated in the Black Lung Benefits Act. 30 U.S.C. § 932(a) (1982). *See* 20 C.F.R. § 725.310 (1984).

However, all of these procedures are only called into play when the Director, through the deputy commissioner, *modifies* a final *award* of benefits. Modification of an award, the process provided for in 30 U.S.C. §§ 919 and 922, is entirely independent of the process of direct review of the original grant or denial of benefits—the process involved in this case.

**11.** Petitioner's "due process" contentions are phrased in terms of the Director's failure to protect petitioner's right to a "fair and orderly administrative review." However, petitioner was allowed to pursue all avenues of review of the eligibility determination which are available to a claimant under the Black Lung Benefits Act, including an appeal to this Court. Therefore—putting aside petitioner's specific contention that the Director failed to comply with statutorily-mandated procedures in reaching the decision to oppose petitioner's claim, *see* footnote 10 *supra*—we have treated petitioner's due process argument as a question of whether the Director complied with the procedural requirements placed on most agencies by the Administrative Procedure Act and on all agencies by the Constitution.

posing a remand for payment of benefits.[12] In the response to the show cause order, the Director stated: "the administrative law judge relied upon the medical report and deposition testimony of Dr. C. Vaughn Strimlan (Employer's Exhibit Nos. 1 and 2), evidence which was not available to the deputy commissioner when the claim was before him for consideration." Therefore, there is no support in the record for the petitioner's contention that the Director acted arbitrarily or capriciously in opposing petitioner's right to benefits before the Benefits Review Board.

## B.

In light of our conclusion that there is no merit in petitioner's first argument, it is necessary to consider petitioner's assertion that the denial of benefits was not supported by substantial evidence. Mr. Pavesi does not contest the ALJ's dismissal of the views expressed by Dr. Eligator and Dr. Levine or the credence given by the ALJ to Dr. Cole's reading of the x-rays. Petitioner contends solely that the opinion of Dr. Strimlan was not a sufficient basis on which to conclude that petitioner did not suffer from pneumoconiosis as defined by the Black Lung Benefits Act.

Once the interim presumption of disability created by § 921(c) of the Act and 20 C.F.R. § 727.203(a)(2) (1984) has been established, the burden shifts to the party opposing an award of benefits to establish one of the requirements of 20 C.F.R. § 727.203(b) (1984).[13] In the present case, the ALJ concluded that the requirements

of subsection (4) of that regulation had been established by the petitioner's former employer. That subsection states that the presumption will be rebutted if "all relevant medical evidence" establishes "that the miner does not, or did not, have pneumoconiosis."

The Black Lung Benefits Act defines pneumoconiosis as:

a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.

30 U.S.C. § 902(b) (1982). The regulations which implement the Act expand on this definition.

This definition includes but is not limited to, coal workers' pneumoconiosis, anthraco-silicosis, anthracosisanthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment.

20 C.F.R. § 727.202 (1984). At oral argument, counsel for the Director conceded, as is obvious from the definition in the statute and the regulations, that the *medical* definition of pneumoconiosis, or "coal workers' pneumoconiosis," is far narrower than the definition of pneumoconiosis in the Black Lung Benefits Act.

■ It is well established that the Black Lung Benefits Act is to be liberally construed to assure widespread benefits to miners disabled by black lung disease. *See Echo v. Director, Office of Workers' Compensation Programs,* 744 F.2d 327, 330 (3d Cir.1984); *Palmer Coking Coal Co. v. Di-*

---

12. Because the Director, in the present case, provided an explanation for his decision to oppose the petitioner's claim despite an initial determination of eligibility by the deputy commissioner, it is not necessary for us to determine whether the Director's actions would have been arbitrary or capricious had no reasons been given.

13. 20 C.F.R. § 727.203(b) (1984) states:

*Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

*rector, Office of Workers' Compensation Programs,* 720 F.2d 1054, 1058 (9th Cir. 1983). Therefore, the Act must be applied in a manner which assures compensation to every miner who suffers from any of the several lung impairments covered by the Black Lung Benefits Act. Consequently, for the decisionmaker to conclude that the claimant does not suffer from pneumoconiosis, the party opposing an award of benefits must point to persuasive evidence which establishes that the claimant does not suffer from pneumoconiosis as defined by the statute and regulations—neither coal workers' pneumoconiosis, as that term is used in the medical profession, nor any other chronic dust disease of the lung arising out of coal mine employment.

■ In reaching the conclusion that the presumption of disability had been rebutted under 20 C.F.R. § 727.203(b)(4) (1984), the ALJ stated:

> I find Dr. Strimlan's report to be a reasoned medical evaluation with substantiating documentation. Based on his examination and studies, he concluded there was no evidence of coal worker's pneumoconiosis.

Neither the ALJ's decision nor the report of Dr. Strimlan on which the ALJ relies states whether Dr. Strimlan's conclusion that petitioner did not suffer from "coal workers' pneumoconiosis" was equivalent to a finding that petitioner suffered from no lung impairment within the definition of pneumoconiosis found in the statute and regulations.[14] In addition, it is not possible to determine from the ALJ's decision whether there was any evidence other than Dr. Strimlan's statement that petitioner did not have "coal workers' pneumoconiosis" which would support a conclusion that petitioner did not have pneumoconiosis under the statutory definition. Under these circumstances, we cannot conclude that the decision of the ALJ is supported by substantial evidence. However, because it is unclear from the record currently before us whether the ALJ relied on evidence apart from the single statement by Dr. Strimlan referred to in the ALJ's decision in reaching the legal conclusion that petitioner did not suffer from pneumoconiosis, we conclude that the matter should be remanded to the Benefits Review Board for reconsideration. In particular, it may be appropriate for the ALJ to clarify the basis for his original conclusion or for the ALJ to take further evidence to clarify the issue.[15]

14. In fact, Dr. Strimlan's deposition testimony (which, together with his report, was before the ALJ) suggests that he defined "coal miners' pneumoconiosis" in its narrower medical sense:

> there was no radiographic evidence for coal workers' pneumoconiosis. He [petitioner] did not have a clinical history compatible with a chronic industrial bronchitis. Based on the evidence that was available to me, I did not feel that there was evidence for pneumoconiosis.

The distinction which Dr. Strimlan draws between "coal workers' pneumoconiosis" and "chronic industrial bronchitis" indicates that his references to "coal workers' pneumoconiosis" were not meant to include all chronic lung diseases which fall within the statutory definition of pneumoconiosis.

At oral argument, the Director suggested that Dr. Strimlan's deposition testimony that petitioner did not suffer from *either* coal workers' pneumoconiosis *or* chronic industrial bronchitis should be sufficient to establish that petitioner did not have any disease within the statutory meaning of pneumoconiosis. But nothing in the record shows that the ALJ understood Dr. Strimlan's reference to "chronic industrial bron-

chitis" as intended to cover all the statutory ground not covered by Dr. Strimlan's reference to "coal workers' pneumoconiosis." Indeed, nothing in the record shows that the ALJ put any reliance at all on Dr. Strimlan's reference to "chronic industrial bronchitis."

15. Petitioner also argues that the ALJ's denial of benefits was defective in that the burden of proof placed upon the employer to rebut the interim presumption of eligibility is lower than the burden on the petitioner to establish that interim presumption. In support of this position, petitioner cites *Underhill v. Peabody Coal Co.,* 687 F.2d 217 (7th Cir.1982). Petitioner characterizes that opinion as concluding that the claimant cannot have an easier burden than the responsible operator. Thus, petitioner contends, assuming that this principle applies equally to both parties, the party seeking to rebut the interim presumption should not have a lighter burden than that placed upon the claimant to establish the presumption.

Assuming *arguendo* that the petitioner properly characterized the *Underhill* decision as requiring equivalent burdens of proof in establishing and rebutting the interim presumption of dis-

### III.

We have concluded that there is no support for Mr. Pavesi's contention that his case should have been remanded for immediate payment of benefits merely because the Black Lung Disability Trust Fund was substituted as the ultimately responsible party. But we have also concluded that the record on appeal does not assure that the denial of benefits was based upon evidence that petitioner did not suffer from any lung impairment within the statutory definition of pneumoconiosis. Accordingly, we vacate the denial of benefits and remand for reconsideration in light of this opinion.

ability, there is nothing in the present record which suggests that the burden on Mr. Pavesi was greater than that required to rebut the presumption. The ALJ concluded that petitioner had established the interim presumption of 20 C.F.R. § 727.203(a)(2) (1984) by presenting the results of pulmonary function studies in the range showing lung impairment as defined by the regulations. The ALJ noted that there was a substantial question whether the pulmonary function studies which produced these results were reliable since Dr. Strimlan had testified that petitioner may not have cooperated fully and the results suggested unreliability. However, the ALJ concluded "[a]fter consideration of all the evidence and testimony with respect to the pulmonary studies, and giving the Claimant the benefit of any doubt, I find that the interim presumption set out in § 727.203(a)(2) has been invoked."

The conclusion that this presumption had been rebutted by petitioner's former employer was only reached after consideration of all of the evidence. The ALJ found that both the x-ray analysis by Dr. Cole which indicated no lung impairment and the "reasoned medical evalua-tion with substantiating documentation" by Dr. Strimlan were persuasive that petitioner did not suffer from pneumoconiosis. The ALJ found that the doctors' reports submitted by the petitioner were conclusory and not based upon thorough medical examinations, and that the petitioner's testimony, "while credible, is not sufficient to establish such total disability." Therefore, it is clear that the ALJ did not require more evidence or more detailed evidence to establish the interim presumption in this case than to rebut it.

Petitioner's contention that it is necessary for the evidence presented in rebuttal of the presumption to explain the medical cause of all of the claimant's symptoms which could arguably support a finding of disability is without support in the statute, regulations, or case law. Furthermore, petitioner's discussion of the degree of proof required to establish or rebut the presumption of disability in other cases is irrelevant to the question whether, in the present case, the burden was unreasonably high for petitioner or unreasonably low for the employer.