

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2005

# Richards v. Director OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4462

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Richards v. Director OWCP" (2005). *2005 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 04-4462

————

JUDY RICHARDS,
Executrix of the Estate of Barbara Ray,

                                        Petitioner,

v.

DIRECTOR, OFFICER OF WORKERS' COMPENSATION
PROGRAMS, United States Department of Labor;
KEYSTONE COAL MINING CORPORATION,

                                        Respondents.

————

On Petition for Review of the September 28, 2004,
Decision and Order of the United States
Department of Labor Benefits Review Board
(BRB No. 03-0824 BLA)

————

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 16, 2005

Before: SLOVITER, SMITH, and VAN ANTWERPEN, Circuit Judges.

(Filed: December 21, 2005)

————

OPINION OF THE COURT

————

VAN ANTWERPEN, <u>Circuit Judge</u>.

Before us is Judy Richards's petition for review of the September 28, 2004, Decision and Order of the United States Department of Labor's Benefits Review Board (the "Board"). In that Decision and Order, the Board affirmed the August 11, 2003, Decision and Order on Second Remand of the Administrative Law Judge ("ALJ"), in which the ALJ determined that Richards did not establish eligibility for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-45, because she failed to prove that pneumoconiosis was a substantially contributing cause of her father's death.

We have jurisdiction over this matter pursuant to 33 U.S.C. § 921(c), and, for the reasons set forth below, we will deny the petition for review.

I.

Because we write only for the parties, we will set forth only the facts necessary to this opinion.

Ralph E. Ray, Sr., a long-time cigarette smoker, worked in various coal mines from 1973 to 1987. Pursuant to the Black Lung Benefits Act, Ray filed a claim for pneumoconiosis benefits in 1987 (the "1987 miner's claim") that was denied in 1989 on the ground that the x-ray evidence did not establish the existence of pneumoconiosis and that the preponderance of better-qualified physicians who had reviewed the case were not of the opinion that Ray suffered from pneumoconiosis.[1]

---

[1] Seven doctors gave medical opinions in connection with the 1987 miner's claim. Drs. Eligator, Cander, and Connelly, were of the opinion that Ray suffered from

Ray died on April 18, 1996. On May 17, 1996, Judy Richards filed a survivor's claim for benefits on behalf of her sister, Barbara A. Ray, a surviving disabled dependent child of Ray. To establish eligibility for survivor's benefits, Richards was required to prove by a preponderance of the evidence that black lung disease (pneumoconiosis) was a "substantially contributing cause" of Ray's death. 20 C.F.R. § 718.205(c)(5). Any condition that actually hastens a miner's death, even briefly, is considered a "substantially contributing cause." Lukosevicz v. Director, OWCP, 888 F.2d 1001, 1005 (3d Cir. 1989).

The evidence relevant to the survivor's claim consisted of x-rays, a CT scan, various medical studies, medical reports from the 1987 miner's claim, and medical reports from Drs. Scott, Wald, and Sinnenberg. Drs. Scott and Sinnenberg did not believe that Ray's death was caused by pneumoconiosis. Dr. Scott, a "B" reader[2] who is certified in internal medicine and pulmonary disease, believed that Ray died of chronic obstructive pulmonary disease ("COPD") with complications caused by his cigarette smoking, and did not believe that exposure to coal dust caused Ray's death. Dr. Sinnenberg, who is

---

pneumoconiosis. Drs. Scott, Tuteur, Bush, and Bajwa, believed that Ray did not have pneumoconiosis. Scott, Tuteur, and Bush were all board-certified in internal medicine and pulmonary diseases and Dr. Cander was certified in internal medicine only. The credentials of Drs. Eligator, Connelly, and Bajwa were unknown.

[2]A "B" reader has passed an examination from the National Institute for Occupational Safety and Health, and is deemed more qualified than someone who has not passed the exam to interpret x-rays for pneumoconiosis. 42 C.F.R. § 37.51; Pavesi v. Director, 758 F.2d 956, 958 n.1 (3d Cir. 1985).

board-certified in pathology, reviewed Ray's medical records and testified at a deposition that Ray probably had a mild form of pneumoconiosis that did not play any role in his death. Dr. Wald, an "A" reader[3] who is board-certified in internal medicine, disagreed with Drs. Scott and Sinnenberg and concluded that although the x-rays and CT scan did not establish pneumoconiosis, Ray's exposure to coal dust was a substantial factor in the progression of his COPD and his death.

On April 21, 1998, the ALJ issued a Decision and Order that granted Richards's claim for benefits pursuant to 20 C.F.R. § 718.205(c). The ALJ found credible Dr. Wald's opinion that Ray's death was at least in part due to pneumoconiosis.

Ray's employer, Keystone Coal Mining Corporation ("Keystone") appealed, and on May 21, 1999, the Board vacated the ALJ's Decision and Order and remanded the matter to the ALJ for further proceedings. The Board did so on the grounds that the ALJ had not reviewed and collectively weighed all of the pertinent evidence as is required under Penn Allegheny Coal Corp. v. Williams, 114 F.3d 22 (3d Cir. 1997), noting specifically that (1) the ALJ stated that x-ray evidence corroborated his finding that Ray had shown the existence of pneumoconiosis, but did not explain how this was so, and (2) that the ALJ did not explain what weight he accorded to CT scan readings that were negative for pneumoconiosis.

In his Decision and Order on Remand, dated August 31, 1999, the ALJ again

---

[3]A "B" reader is regarded as having greater expertise than an "A" reader. Pavesi, 758 F.2d at 958 n.1.

4

granted benefits to Richards.  The ALJ was persuaded by Dr. Wald's statement that the negative x-ray evidence did not preclude a finding of pneumoconiosis because Ray's emphysema condition could have masked evidence of pneumoconiosis.  The ALJ noted that although Dr. Sinnenberg concluded that Ray's COPD was due to smoking, Sinnenberg admitted that Ray "probably" had pneumoconiosis, and that this admission was supported by opinions from the 1987 miner's claim from Drs. Eligator and Connelly, both of whom had diagnosed pneumoconiosis.  The ALJ also noted that Drs. Rao and Patel both diagnosed Ray as suffering from "cor pulmonale,"[4] which the ALJ determined – citing Board precedent – was an indicator of pneumoconiosis.

Keystone then appealed the Decision and Order on Remand to the Board.  On January 29, 2001, the Board again remanded the matter to the ALJ.  The Board did so on the grounds that (1) the ALJ again failed to explain what weight he accorded to the CT scan that was negative for pneumoconiosis, (2) the ALJ erred in interpreting prior Board decisions as establishing that cor pulmonale was an indicator of pneumoconiosis, (3) the

---

[4] Cor pulmonale is a cardiovascular disease and is defined as:

> "Right ventricular (RV) enlargement secondary to malfunction of the lungs, producing pulmonary artery hypertension that may be due to intrinsic pulmonary disease, an abnormal chest bellows, or a depressed ventilatory drive. The term does not include RV enlargement secondary to left ventricular (LV) failure, congenital heart disease, or acquired valvular heart disease. CP is usually chronic but may be acute and reversible."

See Mancia v. Director, OWCP, 130 F.3d 579, 585 (3d Cir. 1997) (citing The Merck Manual, Cardiovascular Disorders (16th ed. 1992)).

ALJ provided no basis for his decision to credit the medical opinions of Drs. Eligator and Connelly from the 1987 miner's claim as supporting Dr. Sinnenberg's opinion in the survivor's claim that Ray had pneumoconiosis, and (4) the ALJ erred by citing in his opinion a medical treatise that was not part of the record and had not been provided to the parties.[5]

On August 11, 2003, the ALJ issued a Decision and Order on Second Remand in which he denied survivor's benefits on the ground that Richards had not proven the existence of pneumoconiosis. The ALJ was no longer persuaded by Dr. Wald's opinion that Ray suffered from pneumoconiosis and instead found credible Dr. Scott's opinion that Ray did not suffer from pneumoconiosis.

The ALJ first observed that Dr. Wald had stated that although he did not see evidence of pneumoconiosis on the x-rays or CT scan, he believed that this was so because radiographic evidence of pneumoconiosis on the x-rays or CT scan might have been present but masked by Ray's emphysema. The ALJ noted, however, that Wald admitted that this opinion was "just conjecture." Next, the ALJ observed that Dr. Wald, who is certified in internal medicine but not in pulmonary diseases, had rejected the 1989 finding that Ray did not suffer from legal pneumoconiosis, thus disagreeing with the opinions of three Board-certified pulmonary specialists, Drs. Scott, Tuteur, and Bush.

---

[5]Richards appealed the Board's January 29, 2001 decision to this Court, and we granted Keystone's motion to dismiss that appeal because we lacked jurisdiction over the appeal as premature.

The ALJ also believed that Dr. Wald's credibility was diminished because Dr. Wald had examined Ray's medical records only after Ray's death, while Drs. Scott and Bush had examined Ray during his life.

The ALJ also found Dr. Sinnenberg's opinion not credible. The ALJ determined that Dr. Sinnenberg's opinion that Ray suffered from pneumoconiosis was equivocal, observing that Sinnenberg stated that Ray "probably" had pneumoconiosis. The ALJ also noted that the fact that Sinnenberg's area of expertise was pathology and not pulmonary medicine weighed against crediting his opinion. The ALJ stated that he was no longer persuaded by the opinion of Dr. Eligator on the grounds that Eligator was unaware of Ray's extensive cigarette smoking history and that Eligator's credentials were not in evidence. The ALJ noted that Dr. Connelly had also relied on an understated smoking history in arriving at his conclusion that Ray's death was due to pneumoconiosis. By contrast, the ALJ observed that Dr. Scott's opinion properly accounted for Ray's long smoking history.

Finally, the ALJ noted that the x-ray and CT scan evidence was "overwhelmingly negative" for pneumoconiosis, Ray was a cigarette smoker who smoked heavily for more than twice the number of years that he worked in the coal mines, and that Ray's exposure to coal dust ended nine years before his death; this was more supportive of the opinions of Drs. Scott, Tuteur, and Bush than that of Dr. Wald.

Richards appealed the ALJ's Decision and Order on Second Remand to the Board on the ground that the ALJ erred by finding not credible the medical opinions upon which

7

he had relied in his earlier decisions. On September 28, 2004, the Board issued a Decision and Order in which it affirmed the ALJ's Decision and Order on Second Remand. In that decision, the Board concluded that the ALJ did not err in reversing his earlier credibility determinations and that the ALJ's ultimate determination that Richards failed to establish the existence of pneumoconiosis was supported by substantial evidence.

## II.

We examine the Board's decision for errors of law and review the ALJ's decision to determine whether it was supported by substantial evidence. Mancia v. Director, OWCP, 130 F.3d 579, 584 (3d Cir. 1997). Substantial evidence is more than a mere scintilla; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. If substantial evidence exists, this Court must affirm the ALJ's interpretation of the evidence even if we might have interpreted the evidence differently in the first instance. Balsavage v. Director, OWCP, 295 F.3d 390, 395 (3d Cir. 2002).

## III.

We are sensitive to the distress that the ALJ's reversal of his initial credibility determinations may have caused for Richards and to the fact that this matter has circulated up and down through the review process several times. Nevertheless, our review of the record leads us to conclude that the ALJ's Decision and Order on Second Remand was supported by substantial evidence and that the Board committed no error of

law by remanding this matter to the ALJ under Penn Allegheny.

Richards argues that the Board erred by affirming the ALJ's determination that Richards did not prove that Ray suffered from pneumoconiosis. In support of this argument, Richards claims that the ALJ erred in discounting the opinions of Drs. Wald and Sinnenberg after having initially credited those opinions.[6] We disagree and conclude that the ALJ's decision to discount the opinions of Drs. Wald and Sinnenberg in favor of those of Drs. Scott, Tuteur, and Bush, was supported by substantial evidence.

ALJs may grant greater weight to the opinions of physicians who have superior credentials to resolve conflicting medical opinions, Adkins v. Director, OWCP, 958 F.2d 49, 52 (4th Cir. 1992), and we accord ALJs "broad discretion" in determining the weight accorded to a doctor's medical opinion. Balsavage, 295 F.3d at 396. We think that the ALJ's weighting of the various medical opinions in the record was supported by substantial evidence.

---

[6]In a related argument, Richards takes the position that the ALJ erred by reversing his previous credibility determinations because those determinations were affirmed by the Board and became the "law of the case." This assertion is not supported by the record – both times that the Board vacated the ALJ's Decision and Orders, the Board made clear that it was vacating the ALJ's decision and was remanding for reconsideration of the relevant evidence, which by nature includes the medical reports at issue.

We also reject Richards's argument that the ALJ's reversal of his initial credibility determinations was "arbitrary and capricious." We find no support in the case law for this standard, and, in any event, we conclude that the well-founded reasons that the ALJ put forth in his Decision and Order on Second Remand for reversing his earlier credibility determinations foreclose any argument that the reversal was done in an arbitrary and capricious manner.

First, an ALJ may rationally prefer the opinion of a "B" reader over that of a non-"B" reader. Evosevich v. Consol. Coal Co., 789 F.2d 1021, 1023 (3d Cir. 1986); see also Pavesi v. Director, 758 F.2d 956, 958 n.1 (3d Cir. 1985) (observing that "B" readers are regarded as having greater expertise than "A" readers in evaluating x-rays for the presence of pneumoconiosis). Dr. Wald is a "A" reader while Dr. Scott is a "B" reader, and the ALJ was accordingly within his discretion to give greater weight to Dr. Scott's interpretation of Ray's x-rays than to Dr. Wald's interpretation.

Second, Drs. Scott, Bush, and Tuteur are board-certified pulmonary specialists, while Dr. Wald is board-certified only in internal medicine. Although Dr. Wald's credentials are not to be ignored, they were not superior to the those of Scott, Tuteur, and Bush as they pertain to skill in the diagnosis of pneumoconisis. Accordingly, the ALJ properly credited Drs. Scott, Tuteur, and Bush over Dr. Wald. See Adkins, 958 F.2d at 52.[7]

Similarly, the ALJ was within his discretion to accord diminished weight to Dr. Sinnenberg's opinion on the ground that it was equivocal. ALJs may accord less weight to equivocal opinions, Griffith v. Director, OWCP, 49 F.3d 184, 186 (6th Cir. 1995);

_____

[7]Richards argues that the ALJ should not have credited Drs. Scott, Tuteur, and Bush because, "in the opinion of Claimant," their reports were "antithetical" to the central concept of the Black Lung Act that coal dust may cause pneumoconiosis. It is axiomatic that we accord no weight to Richards's opinion regarding the doctors' reports, and, in any event, Richards's criticism is misplaced – the cited doctors stated only that coal dust did not contribute to the miner's death *in this case*, not that coal dust could *never* contribute to pneumoconiosis.

10

Risher v. OWCP, 940 F.2d 327, 331 (8th Cir. 1991), and Dr. Sinnenberg opined in this case only that Ray "probably" had pneumoconiosis. Accordingly, the ALJ did not err by dismissing that opinion as equivocal.

Finally, Richards argues that the Board's remanding of the case to the ALJ to explain the weight of the CT scan evidence was improper under our decision in Penn Allegheny because doing so was "patently unreasonable" and was tantamount to a demand that the ALJ render a "perfect decision." We disagree and conclude that the Board's decision to remand this matter to the ALJ was proper under Penn Allegheny.

We made clear in Penn Allegheny that "all types of relevant evidence *must be weighed together* to determine whether the claimant suffers from the disease." 114 F.3d at 25 (emphasis added). As discussed supra, the CT scan did not show evidence of pneumoconiosis but the ALJ nevertheless determined that Ray suffered from the disease. The Board's decision to remand the case to the ALJ to determine what weight (if any) he accorded to CT scan evidence that was negative for the disease was within the mandate of Penn Allegheny. Cf. Consol. Coal. Co. v. Held, 314 F.3d 184, 187 (4th Cir. 2002) (determining that Penn Allegheny's weighing of all relevant evidence was the "proper approach" and vacating ALJ's decision where ALJ failed to balance predominantly negative x-ray evidence against mixed medical opinion evidence). Accordingly, we find no error in the Board's remanding this case to the ALJ for a weighing of the CT scan evidence.

IV.

11

For the foregoing reasons, we conclude that the ALJ's decision was supported by substantial evidence and that the Board committed no error of law. Accordingly, we will deny the petition for review. We have considered all of the other arguments advanced by the parties and conclude that no further discussion is necessary.