Effie KLINE, Widow of William
Kline, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Respondent.

No. 88–3658.

United States Court of Appeals,
Third Circuit.

Argued March 10, 1989.

Decided June 16, 1989.

Maureen Hogan Krueger (argued), Mea-
dowbrook, Pa., for petitioner, Effie Kline.

Jeffrey J. Bernstein (argued), U.S. Dept.
of Labor, Office of the Sol., Washington,
D.C., for respondent, Director, Office of
Workers' Compensation Programs.

Before SLOVITER and BECKER,
Circuit Judges, and POLLAK, District
Judge.[*]

OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

Petitioner appeals from a decision of the
Department of Labor's Benefits Review
Board ("BRB") that affirmed an adminis-
trative law judge's denial of her claim un-
der the Black Lung Benefits Act (the
"Act"), 30 U.S.C. §§ 901 *et seq.* Petitioner
seeks benefits for the disability and death

[*] Hon. Louis H. Pollak, United States District
Judge for the Eastern District of Pennsylvania,

sitting by designation.

of her husband, William Glenn Kline. Under the Act's regulations, petitioner is entitled to benefits if her husband "died due to or while totally ... disabled by pneumoconiosis," a disease related to exposure to coal dust. 20 C.F.R. § 727.201. The regulations create a rebuttable presumption that the disability and death of a miner were due to pneumoconiosis in cases in which the miner was employed in coal mining for at least ten years and had a totally disabling respiratory or pulmonary ailment. 20 C.F.R. § 727.203.[1] Petitioner's husband worked as a coal miner for over ten years and suffered from, and later died of, a totally disabling pulmonary ailment. Hence, petitioner was entitled to the presumption set forth in 20 C.F.R. § 727.203(a). The issue raised on appeal is whether there is substantial evidence in the record to support the administrative law judge's finding that this legal presumption was rebutted.

I

William Glenn Kline began working in the mines in 1932. Despite a diagnosis of pulmonary tuberculosis in 1948, he continued to work intermittently in the mines until he became completely disabled a decade later. He died in 1965 at the age of forty-eight. According to his death certificate, Mr. Kline died of a "Pulmonary Hemorrhage due to Bronchiectasis due to Pulmonary TB, far advanced, quiescent." App. at 35. The sparse medical record of Mr. Kline's illness consists of: (1) the six pages of records from Mr. Kline's approximately eight (non-continuous) years of hospitalization at the Martinsburg, West Virginia, Veterans Administration Hospital; and (2) the opinions of two non-treating physicians, William V. Dzurek, M.D., who testified at petitioner's 1974 administrative hearing, and Bernard P. McQuillan, M.D., a Medical Consultant to the Department of Labor who wrote a one-page opinion letter on petitioner's claim dated May 19, 1980.

Petitioner filed her claim for benefits in 1970 under the Black Lung Benefits Act. The Social Security Administration reviewed and denied the claim, and petitioner requested a hearing. Pursuant to that hearing—the transcript of which is not available—Administrative Law Judge Alan Neff entered a Hearing Decision denying benefits on December 10, 1974. Judge Neff's decision rested in part on the finding that Mr. Kline was employed "less than ten years in coal mine employment as defined in the Act," with the result that his death did not give rise to the presumption of pneumoconiosis. 1974 ALJ Opinion, App. at 20.

Subsequent amendments to the Act permitted reconsideration of petitioner's claim under an expanded definition of the type of work that qualifies a worker as a "miner" for the purposes of the Act.[2] Under these amendments, Mr. Kline had more than ten years employment as a "miner," and thus petitioner was eligible for the legal presumption of pneumoconiosis established by 20 C.F.R. § 727.203(a). Nonetheless, after additional review under the amended Act,[3]

---

1. Section 727.203 provides, in pertinent part:
Interim presumption.
   (a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

   .    .    .    .    .

   (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment....

2. Mrs. Kline testified at the 1974 administrative hearing that her husband had worked for three different employers for a total of seventeen years of mining between 1932 and the late 1950s. Judge Neff had found that not all of that employment qualified Mr. Kline as a "miner" under the statute.

   The Black Lung Benefits Reform Act of 1977 redefined "miner" in a way that encompassed more years of Mr. Kline's employment experience than had the previous definition. Pub.L. No. 95–239, § 2(b), 92 Stat. 95, 95 (1978), codified at 30 U.S.C. § 902(d).

3. The Black Lung Benefits Reform Act of 1977 made provision for re-review of petitioner's claim under its amended standards. Pub.L. No.

the Social Security Administration and the Department of Labor again denied petitioner's claim. The Department of Labor subsequently referred the claim to the Office of Administrative Law Judges in 1984.

Administrative Law Judge Steven Halpern held a hearing and issued a Decision and Order Denying Benefits on July 11, 1986. Judge Halpern acknowledged that Mr. Kline had over ten years of qualifying employment in coal mining.[4] On the basis of that finding, as well as evidence that Mr. Kline suffered from a totally disabling pulmonary ailment,[5] Judge Halpern determined that petitioner was entitled to the presumption that pneumoconiosis caused Mr. Kline's disability and death.

However, Judge Halpern identified two evidentiary bases in the record to support rebuttal of the presumption pursuant to both 20 C.F.R. §§ 727.203(b)(3) and (4).[6] First, Judge Halpern inferred that Mr. Kline did not have any disease related to his coal mine employment. Judge Halpern drew this inference from the alleged absence of any diagnosis in the medical records explicitly linking Mr. Kline's condition to his years in the mines. Second, Judge Halpern found that Dr. McQuillan's 1980 opinion letter established that Mr. Kline did not have pneumoconiosis.

The Benefits Review Board ("BRB") affirmed Judge Halpern's decision, finding

that the judge had "properly credited the opinion of Dr. McQuillen [sic]." BRB Opinion, App. at 6. Based on this evidence, the BRB concluded that the presumption of disability and death due to pneumoconiosis was rebutted under subsection 727.-203(b)(3).[7] Petitioner then filed this application for review of the BRB's decision pursuant to 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 921(c)).

## II

On reviewing a decision of the BRB, we are (1) to defer to those factual findings determined by us to be supported by substantial evidence, and (2) to exercise plenary review over the BRB's conclusions of law. *See Gonzales v. Director, Office of Workers' Compensation Programs,* 869 F.2d 776, 778–79 (3d Cir.1989); *Hillibush v. United States Department of Labor,* 853 F.2d 197, 202 (3d Cir.1988). Petitioner contends that there is not substantial evidence to support the finding that the presumption of disability and death from pneumoconiosis was rebutted. In addition, petitioner contends that Judge Halpern and the BRB erred as a matter of law in failing to apply the legal—as opposed to the narrower medical—definition of pneumoconiosis, and in failing to consider her possible entitlement to benefits under 20 C.F.R. § 718.303.[8]

---

95–239, § 15, 92 Stat. 95, 103–05 (1978), codified at 30 U.S.C. § 945.

**4.** At the hearing, the government stipulated that Mr. Kline had been a miner for over ten years. 1986 Record, App. at 36.

**5.** The diagnoses of the doctors at the Veterans Hospital included pulmonary tuberculosis, pulmonary emphysema, chronic bronchitis, malnutrition, heart disease due to pulmonary disease, hypoadrenalism, and osteoporosis. His final hospital report concludes that Mr. Kline "became a respiratory cripple restricted to [a] wheel chair and then bedridden." App. at 21.

**6.** Subsections 727.203(b)(3) and (4) permit rebuttal as follows:
   (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
       .    .    .    .    .

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
   (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis. Pneumoconiosis, by definition, implies exposure to coal dust. Thus, evidence that supports rebuttal under subsection 727.203(b)(4) also often supports rebuttal under subsection 727.-203(b)(3).

**7.** Because it found the presumption rebutted under subsection 727.203(b)(3), the BRB did not reach the issue of rebuttal under subsection 727.203(b)(4).

**8.** Petitioner also claimed that she was entitled to a presumption similar to that of 20 C.F.R. § 727.203(a) pursuant to 20 C.F.R. § 718.303, which provides in pertinent part:
   Death from a respirable disease.
   (a) If a deceased miner was employed for ten or more years in one or more coal mines

There is no disagreement that, because Mr. Kline worked for over ten years in qualifying coal mining and suffered from a totally disabling respiratory and pulmonary impairment, petitioner is entitled to the presumption under 20 C.F.R. § 727.203(a). The issue on appeal is the adequacy of the rebuttal of that presumption, specifically the sufficiency of Dr. McQuillan's letter and any negative inference reasonably arising from the record.

## A. The McQuillan letter

■ Both Judge Halpern and the BRB relied on Dr. McQuillan's letter to support their determinations that Mr. Kline did not suffer from pneumoconiosis and that Mr. Kline's disability and death were therefore unrelated to his coal mine employment. The letter begins with a summary of Mr. Kline's treatment records and then sets forth Dr. McQuillan's conclusions as follows:

> His chest xray showed no radiologic evidence of pneumoconiosis. At one point he had nodulation but it cleared following anti-tuberculous therapy. There was no conglomeration. His cavitation was felt to represent active pulmonary tuberculosis cavities rather than cavities of pneumoconiosis. Positive sputums were encountered. This man's fibrosis, emphysema, bronchitis and bronchiectasis can easily be accounted for on the basis of his far advanced active cavitary tuberculosis. Upon review of his chart I find no radiologic nor clinical evidence of pneumoconiosis. His death certificate reads pulmonary hemorrhage as the immediate cause of death secondary to bronchiectasis secondary to far advanced pulmonary tuberculosis. I am unable to substantiate a disabling diagnosis of pneumoconiosis in this case.

App. at 27.

This letter is insufficient to support rebuttal under either subsection 727.203(b)(3) or (4) for two reasons. The first inadequacy of the letter stems from the ambiguity surrounding Dr. McQuillan's use of the term "pneumoconiosis." It is unclear whether Dr. McQuillan used "pneumoconiosis" to refer to the legal definition of the disease, as specified in the regulations, or to refer to the narrower medical definition of the disease. The regulatory standard defines pneumoconiosis as "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 727.202.[9] This legal definition encompasses a wider range of afflictions than does the more restrictive medical definition of coal workers' pneumoconiosis.[10]

Recognizing that the legal definition of pneumoconiosis is broader than the medical definition, this court, in *Pavesi v. Director, Office of Workers' Compensation Programs*, 758 F.2d 956, 965 (3d Cir.1985), held that a physician's conclusion that a worker did not have "coal workers' pneumoconio-

---

and died from a respirable disease, there shall be a rebuttable presumption that his or her death was due to pneumoconiosis.

Judge Halpern did not directly address petitioner's claim that 20 C.F.R. § 718.303 provided an independent presumption that her husband's death was due to pneumoconiosis; rather, Judge Halpern stated that there was no entitlement under "any other section of the Act or regulations." 1986 ALJ Opinion, App. at 11.

**9.** The full definition is:

For the purposes of the act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthrosilicosis, massive pulmonary fibrosis, progres-

sive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 727.202.

**10.** The regulations likewise envision a broad view of what constitutes a sufficient causal nexus between coal-mine employment and a miner's injuries. Thus, rebuttal under subsection 727.203(b)(3) is accomplished only if the evidence establishes that a miner's disability or death did not arise "in whole or in part" from coal mine employment. 20 C.F.R. § 727.203(b)(3). *See, e.g., Carozza v. United States Steel Corp.*, 727 F.2d 74, 78 (3d Cir.1984).

sis" was not sufficient rebuttal evidence under 20 C.F.R. § 727.203(b)(4) in that it did not establish, within the terms of the regulation, "that the miner does not, or did not, have pneumoconiosis." We held that, in order to support a subsection 727.203(b)(4) rebuttal finding that a miner did not have pneumoconiosis, "the party opposing an award of benefits must point to persuasive evidence which establishes that the claimant does not suffer from pneumoconiosis as defined by the statute and regulations." *Id.*

The McQuillan letter fails to meet the specificity required for rebuttal under *Pavesi.* Despite respondent's assertion at oral argument that Dr. McQuillan addressed his letter to the legal, rather than to the medical, definition of pneumoconiosis, neither the letter itself nor Judge Halpern's discussion of the letter reflects awareness of that distinction.[11] The letter does not consider, for example, whether Mr. Kline's exposure to coal dust in any way aggravated pulmonary conditions that may have had their origin in other diseases. Thus, the letter cannot carry the weight of establishing that Mr. Kline did not suffer from pneumoconiosis as contemplated by subsection 727.203(b)(4).

With respect to its capacity to establish, pursuant to subsection 727.203(b)(4), that Mr. Kline did not have pneumoconiosis, the McQuillan letter suffers from an independent weakness. The letter suggests possible alternative causes of Mr. Kline's disability and death, but it does not offer an affirmative diagnosis incompatible with pneumoconiosis. Dr. McQuillan's strongest statement is that he was not able to substantiate a diagnosis of pneumoconiosis. The fact that Dr. McQuillan could not *confirm* pneumoconiosis does not suggest that such a condition is inconsistent with the medical evidence. We therefore conclude that the McQuillan letter does not support rebuttal under subsection 727.203(b)(4).[12]

Dr. McQuillan's letter is likewise insufficient to support a finding of rebuttal under subsection 727.203(b)(3). To rebut a presumption of pneumoconiosis under 20 C.F.R. § 727.203(b)(3) it is necessary to *"rule out"* a possible causal connection between a miner's disability and his coal mine employment. *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 123 (4th Cir.1984) (citing *Carozza v. United States Steel Corp.,* 727 F.2d 74, 78 (3d Cir.1984)); *see also Adkins v. United States Department of Labor,* 824 F.2d 287, 290 (4th Cir.1987) (expert's statement that coal miner's disability was due to chronic bronchitis, and not due to coal mine employment, does not constitute rebuttal unless it rules out coal-mining as a causal contributor to the miner's pulmonary ailment). Since Dr. McQuillan's letter does not even undertake to address the nexus between Mr. Kline's employment and his pathology, it does not meet the "rule out" standard.

*B. The negative inference from the medical record*

■ Judge Halpern also drew an inference that Mr. Kline did not have pneumoconiosis or a mining related disability from the medical records taken as a whole. Although Judge Halpern stated that he "would generally be reluctant to rely on negative evidence," he found it significant that "during decedent's many years of hospitalization no diagnosis of a disease related to coal mine employment was made, although it was known to his treating physicians that he had been engaged in the coal industry." 1986 ALJ Opinion, App. at 11. Judge Halpern concluded that such a negative inference supported rebuttal under subsections 727.203(b)(3) and (4).

This inference is unsupported because Judge Halpern did not account for affirmative evidence of a diagnosis of pneumoconiosis: the testimony of Dr. William Dzurek.

---

11. Moreover, the BRB affirmed "the administrative law judge's finding that the evidence is sufficient to establish rebuttal of ... the presumptions that the miner was totally disabled or died due to *coal workers' pneumoconiosis.*" BRB Opinion, App. at 6 (emphasis added).

12. Because this additional insufficiency applies regardless of whether Dr. McQuillan employed the legal definition of pneumoconiosis, this case, unlike *Pavesi,* is not one in which a remand is required to clarify terminology.

Judge Halpern's opinion does not refer to any testimony by Dr. Dzurek. However, Judge Neff's 1974 Decision reports that "[i]n response to a hypothetical question Dr. Dzurek was of the opinion that deceased miner had advanced miner's pneumoconiosis, i.e., complicated pneumoconiosis and emphysema which was attributed to 17 years of coal mine employment and 'related to his [deceased miner's] occupation.'" 1974 ALJ Opinion, App. at 18. Although Dr. Dzurek's testimony was of limited persuasiveness to Judge Neff under the then-operative regulations,[13] that testimony, like the letter of Dr. McQuillan, provides a medical opinion relevant to an assessment of the cause or causes of Mr. Kline's disability and death. Unfortunately, the present record contains none of Dr. Dzurek's testimony beyond what is summarized in Judge Neff's 1974 Decision.[14]

**13.** Because Judge Neff found that the "17 years of coal mine employment" assumed by Dr. Dzurek was not qualifying coal mine employment under the regulations in effect in 1974, he discounted Dr. Dzurek's medical opinion. Judge Neff also found that Dr. Dzurek's opinion was, without further clinical or laboratory findings, insufficient to *prove* that Mr. Kline had a disabling respiratory impairment arising out of coal mine employment. Petitioner no longer shoulders such a heavy burden; under the present regulations she is entitled to the presumption that her husband's disability and death were the result of pneumoconiosis.

**14.** The transcript of the hearing before Judge Neff was not transferred from the Social Security Administration to the Department of Labor. And Dr. Dzurek, who died in 1987 at the age of 90, appears, because of ill-health, to have been unavailable to provide additional testimony in the years prior to his death. Affidavit of William Dzurek [Dr. Dzurek's son], Petitioner's Reply Brief, Exh. A.

**15.** Although the present case does not require us to decide whether a "negative inference" can ever overcome the presumptions embodied in the regulations, we note that it is at least problematic to allow the absence of evidence in a record to be sufficient to rebut a presumption. The purpose of a presumption is to shift the burden of affirmative proof to the party seeking to rebut the presumed fact. The Act's regulations articulate a presumption that pneumoconiosis causes the disability or death of workers who, after exposure to coal dust over a substantial period of time, later suffer from a totally disabling respiratory or pulmonary ailment.

In weighing medical records and testimony and drawing inferences therefrom, an ALJ should identify and discuss pertinent medical evidence. *See Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986). In particular, drawing a negative inference demands consideration of all evidence contrary to that conclusion. Dr. Dzurek had testified in the first administrative hearing that Mr. Kline had advanced pneumoconiosis attributable in part to his years of coal mine employment. In the instant proceeding, in articulating his negative inference, Judge Halpern overlooked or disregarded Dr. Dzurek's testimony. Accordingly, the negative inference cannot be sustained.[15]

In sum, we conclude that the evidentiary record is insufficient to support rebuttal within the meaning of 20 C.F.R. §§ 727.-203(b)(3) or (4). Petitioner's presumption under section 727.203(a) remains unrebut-

That presumption reflects Congress' recognition that medical diagnoses of pneumoconiosis would be unavailable in many cases. *See, e.g.,* S.Rep. No. 743, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code & Cong. & Admin. News 2305, 2315 ("In the absence of definitive medical conclusions that is a clear need to resolve doubts in favor of the disabled miner or his survivors."); *see also* 30 U.S.C. § 921 (addressing regulatory and statutory presumptions). The courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction to assure widespread benefits to miners. Accordingly, " 'the party opposing an award of benefits must point to persuasive evidence' to rebut an interim presumption of disability." *Kertesz v. Crescent Hills Coal Co.,* 788 F.2d 158, 163 (3d Cir.1986) (quoting *Pavesi v. Director, Office of Workers' Compensation Programs,* 758 F.2d 956, 965 (3d Cir.1985)); *see also Gonzales v. Director, Office of Workers' Compensation Programs,* 869 F.2d 776, 779 (3d Cir.1989); *Oravitz v. Director, Office of Workers' Compensation Programs,* 843 F.2d 738, 739-40 (3d Cir.1988).

In this case, there is no dispute that the presumption is properly invoked. Some of Mr. Kline's diagnosed afflictions—tuberculosis, emphysema, and bronchitis—may have been aggravated by or related to exposure to coal dust. To permit the absence of an explicit diagnosis to constitute rebuttal in a case in which respiratory disability is evident would, in effect, shift back to the claimant the burden of proving that which the regulations, in implementation of the legislative purpose, have instructed the courts to presume.

ted, and she is entitled to benefits under the Act.[16]

### III

In view of the absence of rebuttal evidence in the record, the decision below denying Mrs. Kline's claim must be reversed. The question then arises whether our order of remand should contemplate further proceedings or direct the entry of an award. Given the length of Mrs. Kline's travail—nineteen years have elapsed since she first applied for benefits—we conclude that the time has at last come for Mrs. Kline's entitlement to be vindicated. *See, e.g., Sulyma v. Director, Office of Workers' Compensation Programs*, 827 F.2d 922, 924 (3d Cir.1987) (reversing but declining to remand claim for additional evidentiary review). For the foregoing reasons, we conclude that the record in this case establishes Mrs. Kline's entitlement to benefits as a matter of law.

We will therefore reverse the August 11, 1985 BRB Decision and Order and remand this case solely for entry of an award by the BRB.

---

**16.** Because we find petitioner's presumption under 20 C.F.R. § 727.203(a) is not rebutted, we need not address any additional basis for her claim under 20 C.F.R. § 718.303.