

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-1-1995

# Plesh v. Dir., Office of Workers' Comp. Programs

Precedential or Non-Precedential:

Docket 94-3572

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Plesh v. Dir., Office of Workers' Comp. Programs" (1995). *1995 Decisions.* Paper 302.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/302

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-3572

----------

SALVADORE PLESH,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondent

----------

On Petition for the Review of the Final Decision
of the Benefits Review Board
(No. 92-2292 BLA)

----------

Argued Tuesday, June 27, 1995

BEFORE: HUTCHINSON,[0] ROTH and GARTH, Circuit Judges

----------

(Opinion filed December 1, 1995)

----------

Andrew K. Soto (Argued)
Ball, Janik & Novack
101 Southwest Main Street
Suite 1100
Portland, OR 97204

Attorney for Petitioner

----

[0]Judge Hutchinson heard argument of this appeal and participated in its decision. However, Judge Hutchinson died before this opinion was filed.

1

Thomas S. Williamson, Jr.
Donald S. Shire
Christian P. Barber
C. William Mangum (Argued)
Suite N-2605
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Washington, DC 20210

Attorneys for Respondent

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Petitioner Salvadore Plesh, a retired miner, petitions for review of an order entered by the Benefits Review Board (BRB) of the United States Department of Labor (DOL). The BRB upheld the decision of the DOL administrative law judge (ALJ) who terminated Plesh's benefits under the Black Lung Benefits Act, 30 U.S.C. §901 et seq. (BLBA). We conclude that the BRB erred in terminating Plesh's benefits and we will therefore reverse.

I.

Born on May 28, 1917, Plesh began working in a coal mine in 1943, for the Lehigh Valley Coal Company in Hazelton, Pennsylvania. Plesh worked for more than seventeen years, from 1943 to 1960, in underground mines and later in strip mines as a rock and coal driller. Plesh testified that he left the coal mines after he began to feel ill and his doctor advised him to discontinue

2

coal mine employment.  After abandoning coal mine work, Plesh worked as a janitor, a nightwatchman and a mail sorter.

Plesh first filed a claim for benefits under the BLBA on May 29, 1979.[0]  This application was governed by the guidelines set forth in 20 C.F.R. Part 727, which provide certain presumptions in favor of the miner.  On March 29, 1980, the Director awarded benefits and began making monthly payments retroactive to May 1979.

More than six years later, on September 16, 1986, the Director sent a letter to Plesh informing him that a recent review of Plesh's claim file revealed "certain deficiencies." The letter requested that Plesh provide "[m]edical information showing the condition of your lungs" and "[d]ocuments to establish your relationship to any dependents."  The letter further instructed Plesh to "undergo a complete set of medical tests at [DOL] expense."

Plesh underwent the required medical testing.  On November 6, 1986, Dr. Leo Corazza examined Plesh, performed a chest x-ray, and conducted a pulmonary function study (PFS) and an arterial blood gas study (BGS).  Dr. Corazza found that the x-ray "demonstrate[d] no evidence of pneumoconiosis."  Jt. App. 377.

---

[0]In connection with his application for black lung benefits, Plesh was examined by Dr. Harold Silver on December 21, 1979 and by Dr. Roscoe C. Young on April 29, 1980.  Dr. Silver diagnosed chronic bronchitis but opined that the condition was unrelated to coal mine employment.  Dr. Young reported that a chest x-ray showed evidence of pneumoconiosis and that a pulmonary function study indicated a moderately severe restrictive ventilatory defect.  Dr. Young diagnosed early simple coal workers' pneumoconiosis and moderate restrictive respiratory disability.

Dr. Stanley Laucks and Dr. W.S. Cole, both "B-readers,"[0] reread the x-ray and concluded that it was negative for pneumoconiosis.

Dr. Corazza found that the BGS results were within normal limits but noted that the PFS results were "compatible with the diagnosis of chronic obstructive pulmonary disease, moderately severe." Jt. App. 380. Based on his examination of Plesh, Dr. Corazza diagnosed chronic bronchitis, pulmonary emphysema and ankle edema (of unknown etiology). Dr. Corazza also opined, without explanation, that Plesh's condition was not related to coal mine employment.

After conducting further PFS and BGS tests on January 14, 1987, Dr. Corazza observed a decrease in vital capacity "compatible with the presence of some restrictive pulmonary disease." Jt. App. 367. Dr. Corazza further opined that "[t]he appearance of the spirogram[0] [wa]s compatible with some degree of obstructive disease." Id.

The Director determined that the additional medical evidence compiled by Dr. Corazza failed to establish that Plesh was totally disabled due to pneumoconiosis. Consequently, on March 11, 1987, the Director issued an Order to Show Cause, which directed Plesh to "show cause within thirty (30) days why the original award should not be modified to reflect that eligibility

---

[0]A "B reader" is a physician who has demonstrated proficiency in reading x-rays for pneumoconiosis by passing annually an examination established by the National Institute of Safety and Health and administered by the U.S. Department of Health and Human Services. See 20 C.F.R. § 718.202(a)(ii)(E); 42 C.F.R. §37.51.

[0]A spirogram is "a tracing or graph of respiratory movements." Dorland's Illustrated Medical Dictionary 1563 (27th ed. 1988).

4

shall cease effective April 1, 1987." Jt. App. 360. The Order

to Show Cause required Plesh to submit evidence showing that he

was totally disabled due to pneumoconiosis caused by coal mine

employment.

Rather than complying with this mandate, Plesh returned the

Order with the following handwritten note on the last page of the

Order:

> Dear Sir – I am appealing this as of now. Having went
> to the Howard Hospital, for my Pulmonary Medical
> Records and I was told they were sent to Mt. Sterling
> KY Labor Dept – and having taken another exam at Dr.
> Corrazza [sic] –- Now I am going to get another exam
> and will give you further med. evidence of my health
> for Black Lung after 26 years in coal mines. I will
> send this to you as soon as possible – thank you
>
> Sincerely yours
>
> Salvadore Plesh
> [Social Security number omitted]
>
> P.S. Mr. Ratliff – this is the only means of survival
> that my wife and I have to live on now – thank you.

Jt. App. 360-61 (emphasis added). This letter was received by

the Office of Workers' Compensation (OWCP) on March 26, 1987. The

Director did not respond to Plesh's letter, but instead issued a

final order on April 28, 1987 terminating benefits, effective

April 1, 1987. Plesh did not appeal this order.

Two years later, on April 13, 1989, Plesh submitted a new or

second claim for benefits. On July 5, 1989, Dr. Philip Witorsch

examined Plesh, took x-rays, and conducted PFS and BGS tests.

Based on these tests, Dr. Witorsch diagnosed "chronic obstructive

pulmonary disease – chronic bronchitis . . . most likely due to

5

[Plesh's] history of tobacco use." Dr. Witorsch observed that the "chest x-ray is consistent with simple coal workers' pneumoconiosis." Dr. Witorsch opined, however, that "[t]he contribution, if any, of patient's coal mine employment to this impairment is uncertain." At the same time, Dr. Witorsch recommended performing further tests, including a lateral x-ray, lung volume test and an exercise study, to further evaluate whether Plesh's respiratory impairment was attributable to coal dust exposure. Permission to perform these tests was denied.

The Director issued a Proposed Decision and Order Denying Benefits on October 23, 1989. In denying Plesh's claim, the Director explained that because Plesh had filed his second claim more than one year after the denial of his first claim, Plesh's second claim would be treated as a duplicate claim under 20 C.F.R. § 725.309[0] rather than as a request for modification under 20 C.F.R. § 725.310.[0] The Director explained further that Plesh

---

[0]Section 725.309, which is titled "Duplicate claims, provides in part:
> If an earlier claim subject to review under part 727 of this subchapter has been denied after review, a new claim filed under this part shall also be denied, on the ground of the prior denial, unless the [Director] determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met.

20 C.F.R. § 725.309(c).

[0]Section 725.310 provides in part:
> Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the [Director] may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

20 C.F.R. §725.310(a).

had failed to establish "a material change in condition," a necessary prerequisite to filing a duplicate claim.

Plesh appealed to the BRB, which remanded to the Office of Administrative Law Judges pursuant to Lukman v. Director, OWCP, 896 F.2d 1248 (10th Cir. 1990).[0] The ALJ concluded that Plesh's March 26, 1987 letter, wherein Plesh declared "I am appealing this as of now," constituted an effective appeal of the Director's final order terminating Plesh's benefits.

Because Plesh filed his first claim for benefits before April 1980, the ALJ first evaluated Plesh's claim under 20 C.F.R. Part 727. Part 727 provides for a rebuttable "interim" presumption that a claimant with at least ten years of coal mine employment is totally disabled due to pneumoconiosis if the claimant meets any one of the criteria set forth in 20 C.F.R. § 727.203(a). The ALJ found that Plesh had satisfied the (a)(2)[0] and (a)(4)[0] requirements.

---

[0] Previously, the BRB had required that duplicate claims be appealed directly to the BRB rather than to an ALJ. Lukman v. Director, OWCP, 10 Black Lung Rep. (MB) 1-56 (1987), aff'd on recon., 11 Black Lung Rep. (MB) 1-71 (Ben. Rev. Bd. 1988) (en banc), rev'd, 896 F.2d 1248 (10th Cir. 1990). The Tenth Circuit later reversed Lukman, holding that a claimant who filed a duplicate claim had a right to a hearing before an ALJ. Lukman, 896 F.2d at 1254.

[0] A claimant may invoke the interim presumption under subsection (a)(2) if ventilatory studies produce values less than those specified in the table incorporated into section 727.203(a)(2).

[0] A claimant may invoke the interim presumption under subsection (a)(4) if "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 727.203(a)(4).

7

The ALJ further found, however, that the interim presumption had been rebutted, pursuant to 20 C.F.R. § 727.203(b)(3),[0] by Dr. Witorsch's testimony that Plesh's coal mine employment did not significantly contribute to his disability. The ALJ therefore concluded that Plesh was not entitled to benefits under Part 727.

Relying on Caprini v. Director, OWCP, 824 F.2d 283 (3d Cir. 1987),[0] the ALJ then proceeded to evaluate Plesh's claim under the standards set forth in Part 718. Part 718 requires that the claimant bear the burden of proving (1) that he suffers from pneumoconiosis; (2) that the disease arose out of coal mine employment; and (3) that he is totally disabled due to pneumoconiosis. See 20 C.F.R. § 718.201–.204. See also Director, OWCP v. Mangifest, 826 F.2d 1318, 1320 (3d Cir. 1987). The ALJ found that Plesh had established the first two prongs but not the last prong (i.e. total disability). Accordingly, the ALJ denied benefits to Plesh.

The BRB, on appeal, held that Plesh had not timely appealed the April 28, 1987 order and hence the ALJ had erred in applying Part 727. The BRB reasoned that the ALJ had improperly merged Plesh's second claim with Plesh's first claim, and vacated the ALJ's Part 727 findings.

---

[0]A presumption established under subsection (a) may be rebutted in one of several ways, including submission of "evidence [which] establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . ." 20 C.F.R. § 727(b)(3).

[0]In Caprini, we held that where the claim was filed before March 31, 1980 but adjudicated after that date, the ALJ must evaluate the claim under Part 718. 824 F.2d 283, 284 (3d Cir. 1987).

8

Turning to Plesh's second claim, the BRB held that Plesh, by submitting new medical evidence, established a "material change in conditions," as required by 20 C.F.R. § 725.309. See supra note 5. The BRB, having decided that Part 727 was inapplicable because Plesh's appeal was untimely, did not review the ALJ's Part 727 findings, which it had vacated. The BRB then concluded that the ALJ's decision to deny benefits under Part 718 was supported by substantial evidence. Plesh filed a timely petition for review of the BRB's decision.

## II.

The BRB had jurisdiction to review the final order of an ALJ granting or denying compensation benefits under section 21(b)(3) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(b)(3), as incorporated into the BLBA by 30 U.S.C. § 932(a). See Elliot Coal Mining Co. v. Director, OWCP, 17 F.3d 616, 625 (3d Cir. 1994). We have jurisdiction over an appeal from the final order of the BRB under section 21(c) of the LHWCA, 33 U.S.C. § 921(c). Id.

The BRB is bound by an ALJ's findings of fact "if they are rational, supported by substantial evidence, and consistent with applicable law." Id. at 626. See also 33 U.S.C. § 921(b)(3), as incorporated into the BLBA by 30 U.S.C. § 932(a); O'Keeffe v. Smith, Hinchman & Grylls Assocs., 380 U.S. 359 (1965). We review the BRB's decision to ensure that the Board has accepted those findings of the ALJ that are supported by substantial evidence. Oravitz v. Director, OWCP, 843 F.2d 738, 739 (3d Cir. 1988). We

9

exercise plenary review over questions of law.  BethEnergy Mines, Inc. v. Director, OWCP, 32 F.3d 844, 846 (3d Cir. 1994).

### III.

We must first address the threshold issue of whether the Director possessed authority to reopen and reconsider Plesh's 1980 award.  Plesh has challenged the validity of 20 C.F.R. § 718.404(b),[0] which effectuates section 22 of the LHWCA, 33 U.S.C. § 922,[0] and which is incorporated into the BLBA by 30 U.S.C. § 932(a).

Specifically, Plesh contends that Congress has acknowledged that pneumoconiosis is an incurable, progressive disease, and

---

[0] Section 718.404(b) provides:

> An individual who has been finally adjudged to be totally disabled due to pneumoconiosis shall, if requested to do so upon reasonable notice, where there is an issue pertaining to the validity of the original adjudication of disability, present himself or herself for, and submit to, examinations or tests as provided in § 718.101, and shall submit medical reports and other evidence necessary for the purpose of determining whether such individual continues to be under a disability.  Benefits shall cease as of the month in which the miner is determined to be no longer eligible for benefits.

[0] Section 922 provides in relevant part:

> Upon his own initiative, or upon the application of any party in interest . . ., on the ground of a change in conditions or because of a mistake in a determination of fact by the [Director], the [Director] may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case . . . in accordance with the procedure prescribed . . . and . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. § 922.

hence the Director may not withdraw benefits based upon the premise that the claimant has recovered from the illness or that the miner's disability has lessened. Indeed, the Director has conceded that a miner who is totally disabled by pneumoconiosis will never recover, and the Secretary of the DOL has disavowed authority to terminate or modify an award based upon recovery from pneumoconiosis:

> Although one comment praises [section 718.404], the overwhelming majority of comments on this section suggest that it be stricken. These comments note that pneumoconiosis is a progressive disease, and that while the symptoms may, on occasion, subside, the condition itself does not improve. . . .
>
> . . . In order to reflect the fact that the symptoms of pneumoconiosis generally continue, even though statutory entitlement may cease, the Department has changed the title of this section from "cessation of disability" to "cessation of entitlement." Although the Department agrees that the disease does not improve, section 22 of the [LHWCA] provides for modification of awards on a change in condition or mistake in determination of fact. Subsection (b) of this regulation effectuates this provision.

45 Fed. Reg. 13,694 (Feb. 29, 1980) (emphasis added).

We agree that pneumoconiosis is progressive and incurable. The legislative history of the Black Lung Benefits Reform Act of 1977 clearly demonstrates that Congress recognized that coal dust inhalation causes permanent damage. See H.R. Rep. No. 95-151, 95th Cong., 2d Sess. 6 (1977), reprinted in 1978 U.S.C.C.A.N. 237, 242. In fact, the Supreme Court, this court and other courts have recognized the irreversible nature of black lung disease. See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 138 (1987); Shendock v. Director, OWCP, 893 F.2d 1458, 1467 n.10

11

(3d Cir.), cert. denied, 498 U.S. 826 (1990); Kowalchick v. Director, OWCP, 893 F.2d 615, 621 (3d Cir. 1990); Back v. Director, OWCP, 796 F.2d 169, 172 (6th Cir. 1986); Orange v. Island Creek Coal Co., 786 F.2d 724, 727 (6th Cir. 1986); Consolidation Coal Co. v. Chubb, 741 F.2d 968, 973 (7th Cir. 1984); Andryka v. Rochester & Pittsburgh Coal Co., 14 Black Lung Rep. (MB) 1-34 (1990); Stanley v. Betty B Coal Co., 13 Black Lung Rep. (MB) 1-72 (1990); Belcher v. Beth-Elkhorn Corp., 6 Black Lung Rep. (MB) 1-1180 (1984).

The Director argues, however, that the regulation in question, as well as the DOL's authority to reopen a case, does not rely upon an assumption that the claimant's condition can improve. Rather, the Director posits that section 718.404(b), consistent with the statute, authorizes the OWCP to reopen a case only upon a finding of a mistake in the original determination or of a change in condition other than recovery from pneumoconiosis.

Here, the record does not reveal the specific reasons that the Director chose to reopen Plesh's file. The Director's letter to Plesh merely states that his file was "found to have certain deficiencies." This statement is equivocal as to the Director's motivation for reopening Plesh's file. Because our analysis as to the timeliness of Plesh's appeal differs substantially from that of the BRB's, we have no need to address the following two issues, which were not explicitly discussed by either party in their briefs.

First, neither party has informed us as to whether the Director's initial failure to identify the particular "change in

12

[Plesh's] condition" or the Director's "mistake in determination of fact" precludes a remand to enable the Director to make such a finding.  See 33 U.S.C. § 922 and supra note 3.  Second, neither party has informed us as to whether the Director, in claiming a "change in condition" or a "mistake in determination of fact," bears the burden of proof or only a burden of production.

Accordingly, we do not find it necessary to remand for further briefing because under our view of Plesh's appeal, we are satisfied that his letter received by the Director on March 26, 1987, in which he stated "I am appealing this as of now," was sufficient to effectively appeal the termination of his Part 727 benefits.  Moreover, holding as we do infra that Plesh's appeal was timely and effective, our review of the ALJ's findings and conclusions persuades us that substantial evidence existed of Plesh's continuing pneumoconiosis and total disability --evidence which has not been rebutted by the Director.

IV.

For claims filed before April 1, 1980, the DOL's "interim" presumptions apply.  Plesh filed his initial claim on May 29, 1979.  Under the more liberal Part 727 standards, a presumption of total disability due to pneumoconiosis is established if a living claimant has worked for more than ten years as a miner and meets at least one of four specified medical requirements.  See 20 C.F.R. § 727.203(a)(1)-(4).[0]  If the claimant successfully

_____

[0] Section 727.203(a) provides in relevant part:
    A miner who engaged in coal mine employment for at
    least 10 years will be presumed to be totally disabled
    due to pneumoconiosis . . . arising out of [coal mine]

13

invokes an interim presumption, the Director bears the burden of rebutting the presumption in one of four ways:

> (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work . . .; or
> (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work . . .; or
> (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
> (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

Id. at § 727.203(b).

If a claimant "files more than one claim for benefits . . ., the later claim shall be merged with the earlier claim for all purposes if the earlier claim is still pending." Id. at § 725.309(d); see also Tonelli v. Director, OWCP, 878 F.2d 1083, 1086–87 (8th Cir. 1989). Plesh's claim was properly evaluated under Part 727 because his first claim was still pending at the

---

> employment, if one of the following medical requirements is met:
> (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis . . .;
> (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease . . . as demonstrated by values which are equal to or less than the values specified in the following table . . .;
> (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table . . .;
> (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment . . . .

20 C.F.R. § 725.203(a)(1)–(4).

14

time he filed his second claim. Whether Plesh's first claim would be considered still pending depends upon whether Plesh effectively appealed the 1989 denial of benefits due under his first claim.

The ALJ found that Plesh's handwritten letter, which was received by the Director on March 26, 1987, and which was written in response to the Order to Show Cause, was a proper appeal of the order terminating benefits. The BRB disagreed with the ALJ's determination of this issue and vacated the ALJ's findings as to the timeliness of Plesh's appeal and merger of Plesh's claims.

We first note that Plesh's message to the Director, although terse and informal, clearly and unequivocally communicated Plesh's intent to "appeal . . . as of now." Under the regulations, the Director must refer a claim to the Office of Administrative Law Judges if a party requests a formal hearing, which we deem Plesh's "letter-appeal" to have sought. See 33 U.S.C. § 919(c) ("The [Director] shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon . . . .") (emphasis added); 20 C.F.R. §725.421(a) ("In any claim for which a formal hearing is requested . . ., the [Director] shall refer the claim to the Office of Administrative Law Judges for a hearing.") (emphasis added).

We are unaware of any mandatory requirements as to the form that an appeal must take, other than that it be in writing. Nor has the Director apprised us of any such requisites with which Plesh has failed to comply. Hence, we conclude that Plesh's

15

handwritten note constituted a request for a formal hearing before an ALJ, triggering the Director's duty to refer all contested issues to an ALJ for resolution.

The Director argues, however, that Plesh's request for review of the decision to terminate his benefits was ineffective because Plesh made the request prior to the entry of a final order. In support of this contention, the Director cites several regulatory provisions, including section 725.450, which provides:

> Any party to a claim . . . shall have a right to a hearing concerning any contested issue of fact or law unresolved by the [Director]. There shall be no right to a hearing until the processing and adjudication of the claim by the [Director] has been completed. There shall be no right to a hearing in a claim with respect to which a determination of the claim made by the [Director] has become final and effective in accordance with this part.

20 C.F.R. § 725.450.

The Director also relies on section 725.419(a), which provides in part:

> Within 30 days after the date of issuance of a proposed decision and order, any party may, in writing, request a revision of the proposed decision and order or a hearing. If a hearing is requested, the [Director] shall refer the claim to the Office of Administrative Law Judges.

Id. at § 725.419(a). The Director also points to the Secretary's comments reported in the Federal Register:

> One comment recommends that the [Director] should be required to terminate the processing of a claim as soon as a hearing is requested, and immediately forward the claim for a hearing.
> . . . .
> . . . A party should not be allowed to proceed to a hearing before informal procedures are completed. It is not appropriate for a hearing to go forward until the issues are fully identified and most evidentiary

16

> development completed. These preliminary activities
> are within the purview of the [Director], and not the
> [ALJ].

43 Fed. Reg. 36,797 (Aug. 18, 1978).

The Director posits that a claimant cannot exercise his or her right to a hearing until after a final determination has been made as to the claimant's entitlement to benefits. We agree that a claimant is not entitled to a hearing until after the Director has "completed development and adjudication [of claimant's application for benefits]." 20 C.F.R. § 725.421(a). That is, a formal hearing may not be conducted until after the Director has made an initial finding as to the claimant's eligibility for black lung benefits.

Nevertheless, we cannot agree that a premature appeal (that is, a hearing request filed before entry of a final order) is ineffective as an invocation of a claimant's right to a hearing before an ALJ. Notably, none of the regulations cited by the Director forbid a claimant from requesting a hearing prior to entry of a final order; they merely indicate that the claimant cannot "proceed to a hearing before informal procedures are completed." 43 Fed. Reg. 36, 797 (Aug. 18, 1978).

The Director argues that Plesh was required to take some further action after, but within thirty days of, receiving the Proposed Decision and Order. Plesh's failure to file a second request for a hearing, according to the Director, was fatal.

The Director further suggests that the Notice of Appeal Rights, which was included with the Proposed Decision and Order,

17

should have alerted Plesh to the necessity of submitting a written request for a hearing.  The notice advised that "[f]ailure to appeal with [sic] that thirty (30) day period will result in the Order becoming final . . . ."

However, Plesh explained, during the hearing before the ALJ, that the reason he took no further action (after receiving the Proposed Decision and Order and the Notice of Appeal Rights) was that he believed he had already appealed the termination of his benefits by his letter, which stated "I am appealing this [order] as of now."  The ALJ found Plesh's testimony on this issue to be credible.

It is easy to understand how Plesh, who was not represented by counsel at the time the Director advised him that his award was under reconsideration, could be confused as to the proper protocol for appealing the order which terminated his benefits. The Proposed Decision and Order bears a striking resemblance to the Order to Show Cause.  The first four paragraphs of each document are identical; and both are printed on DOL letterhead. The only significant difference between the two documents was that the final order was captioned "Proposed Decision and Order of Modification of Award of Benefit" rather than "Order to Show Cause."  However, a layperson might well fail to discern the legal distinction between an Order to Show Cause and a Proposed Decision and Order.

The Director cites a litany of cases for the proposition that an appeal from an order to show cause is premature because the order to show cause is not a final order.  The Director,

18

however, never responded to Plesh's counter-argument that a premature request for a hearing can be perfected by the subsequent entry of a final order.

Indeed, we have taken such an approach in the context of premature filings of notices of appeal to this court. We have held that an appeal from "an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." Richerson v. Jones, 551 F.2d 918, 922 (3d Cir. 1977); see also Cape May Greene, Inc. v. Warren, 698 F.2d 179, 185 (3d Cir. 1983); New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1178 (3d Cir. 1991); Dowling v. City of Philadelphia, 855 F.2d 136, 138 (3d Cir. 1988); Hodge v. Hodge, 507 F.2d 87, 89 (3d Cir. 1975). Our own appellate rules of procedure, which pertain to certain postjudgment motions, have always provided jurisdictional deadlines. Yet, even these rules have recently been amended, see Fed. R. App. P. 4(a)(2) (as amended Apr. 22, 1993, effective Dec. 1, 1993), to provide for a premature filing of a notice of appeal. Federal Rule of Appellate Procedure 4(a)(2) explicitly provides that "[a] notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry."

We have been given no reason to hold that a premature request for a hearing should be treated differently than a premature appeal from the decision of a district court. Plesh's

19

letter "appealing" from the Order to Show Cause rather than from the subsequent final order will accordingly be deemed filed as of the date the Director's final order was entered. In our view, such a rule does not prejudice the Director.

We therefore conclude that the BRB erred in determining that Plesh had not appealed the 1987 modification of his first claim. In light of our conclusion that Plesh's first claim was still pending, we hold that the ALJ properly merged Plesh's second filed claim with his earlier first claim and hence properly determined that Plesh's claim for benefits should be evaluated under the interim presumptions of Part 727.

V.

We next turn to the ALJ's analysis under Part 727. Under 20 C.F.R. § 727.203(a), a claimant may invoke the presumption of entitlement to benefits if the claimant has been engaged in coal mine employment for at least ten years and the claimant satisfies at least one of five medical requirements.[0] Based upon the Director's stipulation and Plesh's Social Security record, the ALJ credited Plesh with seventeen and three-fourth years of coal mine employment. This finding is supported by substantial credible evidence.

The ALJ found that the x-ray and arterial blood gas study evidence insufficient to satisfy the requirements under sections 727.203(a)(1) and (a)(3). On the other hand, the ALJ found that the interim presumption could be invoked based on the pulmonary

---

[0]See _supra_ note 14 for the text of section 727.203(a).

20

function study and medical opinion evidence pursuant to subsections (a)(2) and (a)(4).  Based on our review of the record, we conclude that the ALJ's finding that Plesh satisfied subsections (a)(2) and (a)(4) is supported by substantial evidence.

To invoke the presumption based on ventilatory study results under section 727.203(a)(2), a claimant who is less than 67 inches tall must demonstrate $FEV_1$ (forced expiratory volume) values equal to or less than 2.3 liters per second and MVV (maximum voluntary ventilation) values equal to or less than 92 liters per minute.  Plesh, who is 5' 4" tall, <u>see</u> Jt. App. 380, underwent ventilatory study testing on five occasions, from December 1979 to July 1989.  The ALJ found that the $FEV_1$ values ranged from 1.33 to 1.92; and the MVV values ranged from 42 to 59.  Jt. App. 102.  Therefore, Plesh was entitled to invoke the presumption under subsection (a)(2).

To invoke the presumption under subsection (a)(4), a claimant may establish the presence of a totally disabling respiratory or pulmonary impairment through "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment . . . ."  20 C.F.R. § 727.203(a)(4).  The ALJ relied on the reports of Drs. Young and Witorsch to conclude that Plesh had established a totally disabling respiratory impairment within the meaning of the BLBA. Dr. Young, who had examined Plesh in May 1980, concluded that Plesh suffered from a moderate respiratory disability.  Dr. Witorsch, who examined Plesh in July 1989, characterized Plesh's

21

respiratory impairment as mild but agreed that Plesh's respiratory impairment would prevent him from performing heavy manual labor as required in coal mine employment. These medical reports constitute substantial evidence supporting the ALJ's finding that Plesh could invoke the presumption under subsection (a)(4).

Once a claimant has successfully invoked the interim presumption under section 727.203(a), as Plesh did under subsections (a)(2) and (a)(4), the burden of production and persuasion shifts to the Director to rebut the presumption in one of the four methods set forth in 20 C.F.R. § 727.203(b). The ALJ found that the Director had failed to rebut the presumption under subsections (b)(1), (b)(2) or (b)(4). Substantial evidence supports the ALJ's determination with respect to the Director's burden of rebuttal under these subsections.[0]

---

[0] Under subsection (b)(1), the Director may rebut the presumption by proving that the claimant is in fact engaged in his usual coal mine work or comparable and gainful work. The record reveals that Plesh has not worked in a coal mine since 1966; indeed, the Director does not contend that rebuttal is established under this subsection.

Under subsection (b)(2), the Director may rebut the presumption if the evidence establishes that the claimant is capable of performing his usual coal mine work or comparable and gainful work. Dr. Witorsch found that Plesh was unable to engage in heavy manual labor because of his respiratory condition; and the Director did not offer any evidence to the contrary.

Under subsection (b)(4), the interim presumption may be rebutted by establishing that the claimant does not have pneumoconiosis. First, there is record evidence to support a finding that Plesh suffers from pneumoconiosis; for example, Dr. Young read Plesh's x-rays as positive for pneumoconiosis. Moreover, the Director relies solely on the reports of Drs. Witorsch and Corazza to establish rebuttal under this subsection. Neither report, however, is sufficient to establish rebuttal.

22

As to subsection (b)(3), however, the ALJ found that the Director had established that Plesh's disability did not arise, in whole or in part, out of coal mine employment. Under Third Circuit precedents, in order to rebut a presumption of pneumoconiosis under subsection (b)(3), the party opposing the award of benefits must "'<u>rule out</u>' a possible causal connection between a miner's disability and his coal mine employment." <u>Kline v. Director, OWCP</u>, 877 F.2d 1175, 1179 (3d Cir. 1989) (emphasis original). In ruling that the Director had met her burden of rebutting the presumption under subsection (b)(3), the ALJ relied entirely on Dr. Witorsch's testimony.

We cannot agree that Dr. Witorsch's testimony "rules out" a possible causal connection between Plesh's disability and his employment as a coal mine worker. Dr. Witorsch never

---

First, Dr. Witorsch's findings were equivocal. Indeed, he concluded that Plesh's x-rays were "consistent" with pneumoconiosis and that pulmonary function studies showed some mild restrictive pulmonary condition. Dr. Witorsch merely noted that a lateral x-ray and additional lung volume tests were necessary for a conclusive determination as to the presence of pneumoconiosis.

Second, Dr. Corazza's opinion was based solely on the fact that "[t]here is no evidence of pneumoconiosis on the x-ray." Jt. App. 378. As noted by the Supreme Court, however, "significant evidence demonstrat[es] that x-ray testing that fails to disclose pneumoconiosis cannot be depended upon as a trustworthy indicator of the absence of the disease." <u>Usery v. Turner Elkhorn Mining Co.</u>, 428 U.S. 1, 31-32 (1976). The ALJ properly discounted Dr. Corazza's opinion as inconsistent with the BLBA because the statute "specifically provides that a presumption of pneumoconiosis comes into play even though it cannot be proved by x-ray." <u>Black Diamond Coal Mining Co. v. Benefits Review Bd.</u>, 758 F.2d 1532, 1534 (11th Cir. 1995) (holding that ALJ properly refused to accredit opinion of physician who stated that he would not diagnose pneumoconiosis absent positive x-ray evidence that the disease existed).

23

affirmatively stated that Plesh's coal mine employment did not contribute to his disability. Rather Dr. Witorsch merely expressed his reservations about diagnosing the cause of Plesh's chronic respiratory disease with any degree of medical certainty.

Dr. Witorsch's deposition testimony is enlightening:

> Q: [D]o you believe that Mr. Plesh has a chronic lung disease significantly related to or substantially aggravated by coal dust exposure?
>
> A: I'm not certain that he does. He has a chronic lung disease but I can't say with any degree of medical certainty that it relates to his coal dust exposure.
>
> . . . .
>
> Q: Is that statement [in Dr. Diggs's medical report] consistent with a chronic lung disease significantly related to or substantially aggravated by coal dust exposure?
>
> A: It is consistent with it but not diagnostic of it. . . . [W]e'd need at least a lateral x-ray [to make such a diagnosis].
>
> . . . .
>
> Q: Are these findings [in your July 5 report] consistent with a chronic lung disease significantly related to or substantially aggravated by coal dust exposure?
>
> A: Again, they are consistent with it but not diagnostic of it. . . .
>
> . . . .
>
> Q: Does Mr. Plesh's history of coal dust exposure support a determination that he has a coal dust related impairment?
>
> A: I think it neither supports it or refutes it. It is consistent with his -- at least it indicates that he had exposure but it's only supportive in the sense that if he never worked in a coal mine or never had any exposure, it would be very inconsistent with that.

24

. . . .

Q: Can you rule out the causal contribution of the restrictive impairment to his lung impairment?

A: Well, I think if he has any, it's at most, very slight and I think he probably doesn't have any. And the reason I say that is his predominant impairment is air flow obstruction . . . . So, any contribution of any restrictive impairment would be negligible to very small.

. . . .

Q: You say the contribution is uncertain?

A: It -- I couldn't be a hundred percent certain from a scientific point of view.

Q: Okay, so forgive me if I'm trying to -- I don't want to put words in your mouth but I want you to address specifically, can you rule out the causal contribution?

A: I cannot absolutely rule it out with this information [i.e. without further tests].

Jt. App. 271-79.

Dr. Witorsch's testimony cannot be read to "rule out" coal workers' pneumoconiosis as a contributing factor to Plesh's disability. Rather, Dr. Witorsch merely stated that he could not confirm the extent to which pneumoconiosis contributed to Plesh's respiratory ailment. In fact, Dr. Witorsch, on several occasions, opined that the medical evidence was <u>consistent</u> with coal workers' pneumoconiosis.

We were faced with a similar set of facts in <u>Kline v. Director, OWCP</u>, 877 F.2d 1175 (3d Cir. 1989). In that case, the ALJ found that the claimant had established the presumption under section 727.203(a). However, the ALJ concluded that the presumption was rebutted under subsections (b)(3) and (b)(4)

25

based upon the testimony of Dr. McQuillan.  Id. at 1177.  Dr. McQuillan reviewed the medical records and concluded that the miner's pulmonary condition was due to advanced tuberculosis, stating that he was "unable to substantiate a disabling diagnosis of pneumoconiosis in this case."  Id. at 1178.  The BRB affirmed, finding that the ALJ had "properly credited the opinion of Dr. McQuillen [sic]."  Id. at 1177.

We reversed, holding that Dr. McQuillan's opinion was insufficient to rebut the presumption.  We explained that "Dr. McQuillan's strongest statement is that he was not able to substantiate a diagnosis of pneumoconiosis.  The fact that Dr. McQuillan could not confirm pneumoconiosis does not suggest that such a condition is inconsistent with the medical evidence."  Id. at 1179.

Similarly, in the case at bar, Dr. Witorsch's testimony that he could not conclude with any degree of medical certainty that Plesh's condition was caused by coal dust exposure does not establish the lack of a causal connection.  Indeed, Dr. Witorsch requested the DOL's permission to perform additional tests (lateral x-rays and lung volume tests) to ascertain whether Plesh's chronic respiratory problems were related to coal dust exposure.  Dr. Witorsch's request was denied, and the record does not reveal the reasons for the denial.  However, the fact that Dr. Witorsch requested these tests indicates at the very least that Dr. Witorsch was uncertain as to whether Plesh suffered from pneumoconiosis arising out of coal mine employment.

26

Therefore, we conclude that the ALJ's finding of rebuttal under subsection (b)(3) is not supported by substantial evidence. The interim presumption under section 727.203(a) consequently remains unrebutted. Thus, Plesh is entitled to benefits under the BLBA.

VI.

In sum, we conclude that the record establishes Plesh's entitlement to black lung benefits as a matter of law. We will therefore reverse the BRB's decision and order and remand this case solely for reinstatement of Plesh's benefits, which had been erroneously terminated.